## THE STATE OF KANSAS v. THOMAS DAVIS.
### No. 10283.

1. FALSE PRETENSES—*Defendant Sufficiently Connected Therewith.* The defendant and one T. were jointly charged in two counts with obtaining from one B. property by false pretenses. The first count charged the obtaining of a team of horses on the 8th of December. The second count charged the obtaining of another horse and a check for $20 on the 9th of December. The defendant admitted his presence with T. on the 8th. Whatever false pretenses were made at all were then made by him. All the property obtained was obtained in exchange for the defendant's note for $240. The false pretenses relied on related to the defendant's property, and the consideration received by him from T. for the note. The defendant was not present on the 9th, but sent a letter to B. concerning the payment of the balance of the note over the price of the team obtained on the 8th. *Held,* First, that it was not incumbent on the state to prove that the defendant actually shared in the proceeds of the property obtained by his confederate, T., by means of the defendant's false pretenses; second, that as the false pretenses of the defendant still operated on the mind of B. on the 9th, and caused him to regard the note as good, the letter written by the defendant to B. and presented on the 9th was sufficient to connect him with the transaction on that day.

2. INSTRUCTIONS, *Covering the Issue Tried.* It is only necessary that the instructions should cover the issue actually presented in the case, and where the defendant in a criminal action testifies in his own behalf, the court may assume that the facts proven by the witnesses for the state and admitted by the defendant are true, and a failure on the part of the court to state the law fully with reference to those matters that are uncontested is not material error.

*Appeal from Jackson District Court.*

THOMAS DAVIS was convicted of obtaining money by false pretenses. He appeals. The opinion herein, filed November 9, 1895, states the material facts.

*Solomon & Bland,* and *A. F. Martin,* for appellant.

*F. B. Dawes,* attorney general, *A. E. Crane,* county attorney, and *Hayden & Hayden,* for The State.

The opinion of the court was delivered by

ALLEN, J. : The appellant and one John Tannyhill were jointly charged with obtaining from William C. Bowser three horses and a check for $20 by means of false pretenses. It appears that the defendant had at one time worked for Bowser, who was a farmer. On the 8th of December, 1892, Davis and Tannyhill went to the residence of Bowser. Tannyhill, being a stranger, was introduced to Bowser by Davis. The defendant testified in his own behalf, and admitted that he went to Mr. Bowser's house at the time stated, in company with Tannyhill, and introduced him to Bowser ; that Tannyhill asked Bowser if he had a team of horses to sell ; that Bowser replied he had ; that Tannyhill and Bowser then went out to the corral ; that he remained and talked with Mrs. Bowser ; that Bowser came back to the door, showed him a note, and asked him if it was his note ; that he looked at the note and said, " Yes, I gave that note to Tannyhill in settlement " ; that Tannyhill afterward brought out two horses ; that he was not present during the negotiations for the horses ; that he understood when they went there that Tannyhill intended to trade his note for horses ; that afterward Bowser approached

him to buy cattle; that he then bargained for some cattle, and gave a check for $111 on the Effingham bank; and that he did not have money of his own in the bank to meet it, but expected his brother to pay for the cattle and take them. The horses were taken away by Tannyhill, but the cattle were still left in Bowser's possession.

The false pretenses charged are that Davis represented to Bowser that the note before referred to, which was for $240, was given by Davis to Tannyhill in payment for cattle which he had bought, and which he (Davis) then had in his possession, and was feeding with other cattle at or near Muscotah; that he also pretended that he had money deposited in the bank of Effingham to meet the check for $111. The means by which it is charged that the property was obtained was through a trade of an interest of $160 in Davis's note by Tannyhill to Bowser in exchange for two horses. The information contains two counts: The first charges obtaining the two horses as above stated; the second count charges obtaining another horse and Bowser's check for $20 on the next day, by means of the same false pretenses.

The issue at the trial was narrowed down to the question whether or not the pretenses alleged were in fact made. Bowser, his wife and daughter testified that they were made. The defendant denied making any such statements or representations. There was no controversy as to the fact that the property charged in the information to have been obtained was in fact purchased by Tannyhill from Bowser and taken away, nor that the only consideration paid for it was the Davis note for $240. Nor was there any claim by Davis that the note was in fact given for cattle he

was then feeding. His claim on the witness-stand was that the note was given on a settlement of accounts, in payment for $175 of borrowed money, a pony, and a cow. Davis was not present at the time the third horse and Bowser's check for $20 were obtained. The only manner in which he was connected with the transaction was by what took place on the 8th of December, and a note claimed to have been written by Davis to Bowser and presented to him by Tannyhill and one Dunkel, who was with him on the 9th. This paper was not produced at the trial, and one of the claims of error is in the admission of oral testimony as to its contents. No one appears to have seen it after the day on which it is claimed to have been presented. The only proof as to the signature is that of Jessie Bowser. It appears that she wrote the first check for $111 on the 8th, and saw Davis sign his name to it. She testifies that she was acquainted with his signature, and that the signature to the paper was Davis's; that its contents were: "Mr. Bowser, pay to Mr. John Tannyhill the balance in the note, and I will stand good as I promised yesterday." Dunkel, who it is claimed presented this paper to Bowser, was placed on the witness-stand and denied ever having had such a paper. We think the loss of the paper was sufficiently shown, if it ever existed, by the testimony of the Bowsers, and that there was competent testimony as to the genuineness of the signature.

It is earnestly insisted, however, that the testimony was wholly insufficient to sustain the conviction of Davis on the second count. If the false pretenses charged to have been made were in fact made by Davis on the 8th, they undoubtedly formed the basis of Bowser's confidence in the value of the note and

Davis's ability to pay it. The note written by him is sufficient to connect him with the transaction on the 9th, to show that he knew of and was privy to the design to obtain from Bowser the balance of the $240 over the price of the team of horses obtained on the 8th. While counsel earnestly insist that the evidence is insufficient to warrant a conviction, we are not able to say that it is so. The pretenses charged to have been made were well calculated to inspire confidence in the ability of Davis to pay. It is not at all improbable that a man of ordinary prudence in making a sale of horses would make some inquiry as to the value of the paper he took in payment for them, and it clearly appears from Davis's own testimony that his note was worthless; that he did not at the time of the trade have any means of payment, nor was there anything in his circumstances or his business to recommend the note as a good one. The jury, who saw the witnesses, have given credit to those who testified in behalf of the state, and we find nothing in the record to convince us that they were deceived.

*1. False pretenses— defendant sufficiently connected therewith.*

Many errors are claimed in the instructions. Some of them appear at first blush to be serious, but when considered in the light of all of the testimony offered at the trial, we find nothing sufficient to warrant a reversal. The main, and we may say substantially the only issue tried, was whether or not the defendant did pretend that the note was given for cattle, and that he was feeding the cattle near Muscotah, where he lived, and that he had money in the bank to pay the check he gave to Bowser. These pretenses were as to a past transaction and existing facts, affecting materially the ability of the defendant to pay. If false, and made for the purpose of defrauding the

complaining witness, and relied on by him, the property having been actually obtained by means of them, they constituted a crime.

Eight instructions were asked by the defendant. The first was modified and given, and the only portions of the instruction as given that appear objectionable are copied from the instructions asked, and those portions do not appear prejudicial to the defendant under the issue actually tried. The second and third instructions asked do not correctly state the law. It is not indispensable that the representations "be as to the possession by the party at the time of certain property," and "the fact that the maker of said note, Thomas Davis, was and. may have been at the time financially irresponsible and insolvent" was not wholly immaterial under the issues in the case. So much of the fourth, fifth and sixth instructions asked as were sound and applicable to the case are contained in the twenty-seventh instruction given by the court. We perceive no valid objection to the seventh instruction given. The eighth, which is to the effect that the jury may take into account the inability of Bowser to read, is only objectionable because his inability to read would not render him any more easily deceived by pretenses of the kind claimed than if he were a very learned man. The jury were told that they might take this into consideration with all the other circumstances. It is to be presumed that the jury gave such weight, and such only, to this circumstance as it was fairly entitled to. Twelve such men as are usually impaneled. to try a case in the district court are ordinarily quite capable of determining what circumstances should be given weight, and what not, and in this case the court did not attempt to tell them anything more than that

2. Instructions, covering the issue tried.

they ought to consider this circumstance. In some cases it might be a very important circumstance, though in this it appears to us quite unimportant, and we have no doubt it was so considered by the jury.

The tenth instruction, standing by itself, would be erroneous, but taken in connection with all the other instructions and as applied to the determination of the actual controversy in this case, does not appear to be misleading, and is not sufficient ground for a reversal.

It is insisted that the fifteenth instruction is misleading because it states that it is not necessary that the evidence should show that Davis shared in the proceeds of the property obtained: The evidence in the case clearly shows that Tannyhill and Davis came to Bowser's together, and went away together. It also shows that whatever false representations were made were in fact made by Davis himself. We do not think it was incumbent on the state to show that any division was made of the property obtained by this fraudulent transaction. It was sufficient when it was proven that Davis and Tannyhill, acting together, obtained Bowser's property by means of false pretenses, with the intent to cheat and defraud him of it. If it were a fact that Tannyhill kept all the property, Davis would still be guilty.

Other errors are claimed on the instructions and in the admission of evidence, none of which appear worthy of especial mention. Viewing the whole record, the defendant appears to have been fairly tried, and the judgment must be affirmed.

All the Justices concurring.