## In re APPLEBAUM.

### Appeal of STATE BANK.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 278.

**1. Bankruptcy 413(4)—General specification of objection to discharge of bankrupt for false oath held bad on exception.**

General specification to objection to discharge of bankrupt for false oath, merely alleging that he had failed to put into his schedules names of all creditors, *held* bad on exception.

**2. Bankruptcy 408(1).**

Bankrupt's belief that creditor would not press him will not excuse his failure to schedule debt, if he really believes it was a debt, as respects objection to discharge for false oath.

**3. Bankruptcy 408(1)—Honest confusion of bankrupt on question whether debt should be scheduled will excuse his omission to schedule it, as affects his right to discharge notwithstanding false oath.**

Honest confusion of bankrupt on question whether claim against him is in fact a debt which should be scheduled will excuse his failure to schedule it, as affects his right to discharge notwithstanding false oath.

**4. Bankruptcy 467—Finding of referee, confirmed by court, that bankrupt had not knowingly made false oath affecting his right to discharge, held not reversible, though referee may have acted upon mistaken ground.**

Referee's finding, affecting bankrupt's right to discharge, that he had not knowingly and fraudulently made a false oath in omitting to schedule debt owed his sister, which was confirmed by court, and which did not disclose ground of decision, but was not clearly against the evidence, *held* not reversible, though referee may have acted on a mistaken ground.

**5. Bankruptcy 407(5)—Creditor, objecting to discharge, may assert reliance on financial statement, though it conducted an independent examination (Bankruptcy Act, § 14b[3], being Comp. St. § 9598).**

Creditor, objecting to discharge of bankrupt, under Bankruptcy Act, § 14b(3), being Comp. St. § 9598, may assert reliance on financial statement made by bankrupt to obtain credit, though it conducted an independent examination.

**6. Bankruptcy 407(5)—Bankrupt's making of false statement, whereby corporation obtained money held not to bar his discharge (Bankruptcy Act, § 14b[3], being Comp. St. § 9598).**

Under Bankruptcy Act, § 14b(3), being Comp. St. § 9598, denying discharge to bankrupt who has "obtained money or property on credit upon a materially false statement in writing," it is essential that bankrupt himself, and not a third person or corporation owned by him, obtain the money or property, and bankrupt's making of false statement, whereby corporation substantially owned by him obtained money, *held* not to bar his discharge.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Philip Applebaum. From a decree dismissing specifications of objections to discharge, and granting the discharge, the State Bank, a creditor, appeals. Affirmed.

The bankrupt was adjudicated on his own petition on November 15, 1924, and applied for his discharge a year later. The appellee, a judgment creditor, filed a number of specifications, of which, however, only two were argued in this court: First, that the bankrupt had made false oath in failing to include among his creditors, Kate Samuels, his sister, who had made him a loan; and, second, that

he had obtained a loan from the appellant by a false financial statement as to the condition of the P. A. Butter Market, Inc., a corporation of which he owned all the stock. The District Court referred the issues to the referee as special master, who overruled them all. His report the District Court confirmed and granted the defendant his discharge.

The facts in brief are as follows: Applebaum was engaged in business as a grocer under the form of a corporation of which he owned substantially all the stock. He got into financial straits, and borrowed from various of his relatives, among them his sister, Kate Samuels, to whom he gave certain insurance policies as security, and whom he omitted from his schedules. On his examination he swore that he did not regard her as a creditor. The evidence was fragmentary, and the master decided that he did not knowingly and fraudulently make false oath in so omitting her as a creditor.

The false financial statement was issued to obtain money for the corporation upon notes made by it, indorsed by him, and taken by the creditor. It was signed by the bankrupt, but the money went to the corporation, and there was no evidence that he obtained any part of it for himself, or intended to do so at the time when he issued it, except in so far as he might later withdraw it from the business. The referee dismissed this specification upon the ground that the bank did not rely upon the statement in advancing the money, that it had not shown it false, and that the bankrupt did not make it as an individual.

Max Silverstein, of New York City (Archibald Palmer, of New York City, of counsel), for appellant.

Yankauer, Davidson & Mann, of New York City (Leo Wechsler, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

PER CURIAM. [1, 2] The second specification alone covers the omission to schedule the sister as a creditor; it is general, merely alleging that he failed to put into his schedules the name of all his creditors. It was certainly bad on exception, and perhaps bad anyway; but, as the point was apparently not raised, we proceed to the merits: Kate Samuels had lent at least $3,000, apparently $4,000 in all, to the bankrupt, and held some insurance policies as security. Just why he did not include her does not very satisfactorily appear. Whether he thought the collateral canceled the debt, whether he merely ex-

pected her not to press him, or whether he regarded her as not on a parity with his other creditors, we cannot tell. In Joseph v. Powell, 213 F. 627, 130 C. C. A. 291, we held that a financial statement was none the less false because it omitted creditors who the utterer did not think would press him. So here we must hold that the mere fact that a bankrupt thought that a creditor would not press him would not excuse his omission of the debt, if he really believed that a debt it was.

[3, 4] However, we see no reason to upset the finding that this bankrupt did not know that she was a creditor when he omitted her. The bank must prove the appellee's belief upon a matter of law; any honest confusion on the question will therefore excuse him. The referee may have been mistaken, and supposed that it was enough if the bankrupt merely thought his sister, though a creditor, would not press him, or he may have found that he did not really think she was a creditor at all. The report does not say anything definite on the subject, but it does find the specifications not proved, and certainly the evidence is not so clear that we can say as matter of law that the finding was wrong. Had the bank been dissatisfied, it should have asked for a more definite finding.

[5] The other specification raises a question of law. The referee was wrong in supposing that the bank could not rely on the financial statement because it made an independent examination. A lender may rely on two sources of information at once. Moreover, we shall assume that the statement was false. The appellant relies on In re Bleyer, 215 F. 896, 132 C. C. A. 236 (C. C. A. 2) but that came up on exceptions to the specifications which expressly alleged that the bankrupt had obtained some part of the money lent to his corporation. That alone saved the specifications. The same is true of In re Dresser, 146 F. 383, 76 C. C. A. 655 (C. C. A. 2).

[6] If it is necessary under section 14b (3), (Comp. St. § 9598), to show that the bankrupt got any of the property, the evidence is not sufficient. The corporation got it, and so far as appears he never withdrew any part of it, and, although he owned all the stock, there is no evidence that he ignored the corporate entity or treated the corporate till as his own. So the case presents the question whether the word "obtains," in section 14, means that the bankrupt gets the money or property himself, or whether it is enough that he is the means of getting it for a third person. To put a bare instance: Suppose the bankrupt wishes to accommodate another person and indorses

his note, making a false statement as to the maker's financial ability, to secure its acceptance. The holder would be the bankrupt's creditor, but by hypothesis the money would go to the maker. A majority of the court believes that the statement would not bar the bankrupt's discharge, because he had not obtained the money.

The English statute against false pretenses, in its original form, was interpreted as requiring the accused to get the property. Rex v. Garrett, 6 Cox C. C. 260; Jones v. U. S., Fed. Cas. No. 7499; Willis v. People, 19 Hun, 84; People ex rel. Phelps v. General Sessions, 13 Hun, 396, 400; Bracey v. State, 64 Miss. 26, 8 So. 165. It was changed (24 and 25 Vict. c. 96, § 89), and to-day either by statute or by decision the law is generally the other way (Commonwealth v. Harley, 7 Metc. [Mass.] 462; Commonwealth v. Langley, 189 Mass. 89, 47 N. E. 511; Fisher v. State, 161 Ark. 586, 256 S. W. 858; People v. Woods, 59 Cal. App. 740, 212 P. 41; People v. Aronson, 173 App. Div. 734, 156 N. Y. S. 396, affirmed 218 N. Y. 684, 113 N. E. 1062).

In re Dunfee, 219 N. Y. 188, 114 N. E. 52, construing section 17 (2), (Comp. St. § 9601), does not touch the question. Some of the cases are to be distinguished, because the accused was indicted as accessory, State v. Davis, 56 Kan. 54, 42 P. 348; Sandy v. State, 60 Ala. 58; People v. Moran, 43 App. Div. 155, 59 N. Y. S. 312, affirmed 161 N. Y. 857, 57 N. E. 1120; Griggs v. U. S., 158 F. 572, 85 C. C. A. 596 (C. C. A. 9). It may be that section 14b (3) was drawn following the statute of false pretenses, but the majority thinks that, if so, the original interpretation was the right one, and that in any case, when Congress chose the same words, it must be supposed to have accepted the original interpretation along with them.

Order affirmed.