In the Matter of Barnett BAKER, Bankrupt.

No. 51891.

United States District Court
E. D. New York.

Feb. 15, 1956.

Lillian B. Baker, New York City, Irving Barry, New York City, of counsel, for bankrupt.

Trachman & Krosner, New York City, Irving R. Krosner, New York City, on the brief, for trustee.

GALSTON, District Judge.

The referee's order, which is certified for review, sustains certain of the specifications of objection to the bankrupt's discharge and denies his discharge.

The trustee also filed a cross-petition for review, praying that in the event that the court should fail to affirm the referee's order of January 4, 1956, the order be reversed insofar as the referee failed to sustain certain other specifications in opposition to the discharge of the bankrupt.

The decision of the referee on which the order to be reviewed is based was given orally by the referee, and is contained in the minutes of the hearing of November 29, 1955.

First to be considered is the petition of the bankrupt. It sets forth those objections which the referee sustained relating to the failure of the bankrupt to list as creditors Harry Kazan and Samuel Rosen in his schedules. It is the contention of the bankrupt that his failure to do so was unintentional, and that the evidence does not justify a finding that these creditors were intentionally and unlawfully omitted from the schedules of the bankrupt.

The schedules listed only one creditor, Kentile, Inc., in the amount of $26,610.-38, based on a judgment which that company recovered against the bankrupt in the Supreme Court, Queens County, on April 27, 1954. The cause of action was based on a personal guaranty of the bankrupt for merchandise sold by the creditor to Causeway Carpet, Inc.

The record discloses that Baker was an officer and a stockholder of Causeway Carpet, Inc. A petition .in bankruptcy was filed in Florida against that corporation. Subsequent to the failure of the corporation, the bankrupt entered into business in the City of New York.

In the hearing in support of the specifications of objection to the discharge, the trustee introduced in evidence an agreement dated December 12, 1948, between the bankrupt, his son Milton Baker, Samuel Rosen and Harry Kazan, and the Causeway Carpet Co. This was not an uncomplicated agreement from a layman's standpoint, and could easily lead to the misinterpretation given by the bankrupt in his testimony before the referee.

The agreement recites five parties, the fifth party being the Causeway Carpet, Inc. The object of the agreement concerned the purchase and sale of the stock which Kazan and Rosen had in the Causeway Carpet, Inc. But in addition to showing that the Bakers had agreed to pay $6,000 for the stock, there was an undertaking by the Bakers to repay to Kazan and Rosen a loan made by Kazan and Rosen in the sum of $1,500 to the Causeway Carpet, Inc. There was a further provision whereby the Bakers pledged their stock with one Berk as escrow agent to hold the shares as collateral security for the performance by the Bakers of their obligations to Kazan and Rosen.

The Carpet company joined in the execution of the agreement, as the instrument recites, "because of the fact that the parties of the third and fourth part have made demand upon the party of the fifth part for immediate repayment of the loan advanced by the parties of the third and fourth part." Then there appears in the agreement the statement "that if the party of the fifth part joins in the execution of this agreement, and if the party of the fifth part will encumber the property of the party of the fifth part by executing a chattel mortgage in favor of the parties of the third and fourth part, then the parties of the first and second part will purchase the stock of the parties of the third and fourth part, and will repay to the parties of the third and fourth part the loan given by the parties of the third and fourth part to the party of the fifth part." There are further obligations stated in that agreement which were assumed by the Carpet company, all of which might very

well have led the bankrupt to the belief that Kazan and Rosen were creditors of the Carpet company.

■ I cannot read the agreement of December 12, 1948, and the bankrupt's testimony in respect thereto, and reach the conclusion that a fraudulent intent to omit Kazan and Rosen as creditors from his schedules was established. Nothing was demonstrated which would disclose that the bankrupt had anything to gain from the omission of these two men as his creditors. It is equally clear that Kentile, Inc., the only creditor listed in his schedules, was not in the slightest degree prejudiced in this proceeding by the failure of the bankrupt to list Kazan and Rosen as co-creditors. The most that can be charged, it seems to me, against the bankrupt was a technical failure to list these two creditors, and giving incorrect testimony which the referee held to be intentionally false.

What Judge Patterson said in In re Burroughs, D.C., 18 F.Supp. 921, 922, in a similar situation, I find very convincing. Judge Patterson said:

" * * * The false oath that will prevent discharge must be one made 'knowingly and fraudulently.' Section 14, sub. b, as amended 11 U.S. C.A. § 32, sub. b, and section 29, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 52, sub. b; In re Slocum, 2 Cir., 22 F.2d 282. Where a bankrupt omits an asset of substantial value from his schedules, the inference that the omission was fraudulent is not hard to draw; one's immediate reaction is that the omission was deliberate, in the hope of concealing the asset. Where a bankrupt fails to list a liability, it is not so easy to conclude that the omission was made fraudulently. Generally the omission of a liability is to the disadvantage rather than the advantage of a bankrupt, for it may well result in the debt not being discharged. Unless the facts are unusual, the natural inference is that the omission to list a liability in schedules came about through mistake or oversight. In re Crenshaw, D.C.Ala., 95 F. 632. See, also, In re Applebaum, 2 Cir., 11 F.2d 685; Sharcoff v. Schieffelin & Co., 2 Cir., 70 F.2d 725."

See also In re Barry, D.C., 52 F.Supp. 496; In re Taub, 2 Cir., 98 F.2d 81; In re Lovich, 2 Cir., 117 F.2d 612.

For the foregoing reasons I am of the opinion that the bankrupt's petition should be sustained, and the referee's order as to that specification be reversed.

We come now to the petition of the trustee. The trustee had set forth specifications of objection to the discharge on the ground that the bankrupt had failed to keep books of account and records from which his financial condition and business transactions might be ascertained.

The referee's decision was stated at the hearing. No formal findings of fact were set forth. However, it must be concluded that the bankrupt did not furnish any evidence from which his financial condition could be ascertained. Certainly the income tax returns for 1952 and 1953 are in themselves not sufficient. He kept no records showing payments which he received from thirty to fifty people with whom he transacted business. There was no record of the merchandise which he purchased, nor of the funds expended by him for labor and supplies. It would seem that the bankrupt's business, though somewhat casual, should have been disclosed, if not in books of account, at least by other means. I agree with the trustee that specification of objection No. 2 should have been sustained.

For similar reasons specifications Nos. 3 and 4 were at least in part sustained. They are closely related to specification No. 2.

■ It is, of course, true that if a bankrupt's business is such that books would not ordinarily be kept, a failure to keep them would not bar his discharge. Morris Plan Industrial Bank of

New York v. Dreher, 2 Cir., 144 F.2d 60. In each case the failure becomes a question to be determined by the nature of the business. Here the bankrupt dealt with a number of people, and though the amounts involved were small, there was not sufficient proof adduced by the bankrupt to enable his financial condition to be ascertained. The burden was on him. See In re Greenberg, D.C., 46 F.Supp. 289; In re Herzog, 2 Cir., 121 F.2d 581; In re Muss, 2 Cir., 100 F.2d 395 and White v. Schoenfeld, 2 Cir., 117 F.2d 131.

I conclude, therefore, that the referee should have sustained specifications of objection Nos. 2, 3 and 4, and the referee's order in that respect is reversed.

But on the whole, therefore, the bankrupt is not entitled to his discharge.

Settle order.