**In the Matter of Pincus MARCUS, Bankrupt.**

**No. 91332.**

United States District Court
S. D. New York.
March 7, 1957.

Seaver & Feigenbaum, New York City, for objecting creditor, New York Credit Men's Adjustment Bureau, Inc., as Trus-

tee in Bankruptcy of P. M. Undergarment Corp., Irving J. Seaver, New York City, of counsel.

Curran, Mahoney, Cohn & Stim, New York City, for bankrupt, Menahem Stim, John F. Kelly, New York City, of counsel.

FREDERICK VAN PELT BRYAN, District Judge.

This is a petition for review of an order of the Referee in bankruptcy discharging the bankrupt.

Petitioner, New York Credit Men's Adjustment Bureau, Inc., is the Trustee in bankruptcy of P. M. Undergarment Corporation, and as such Trustee is a judgment creditor of the bankrupt Marcus.

Marcus was adjudicated a bankrupt on his voluntary petition on September 30, 1955. Specifications of objection to his discharge were filed by petitioner in due course. After a hearing on the specifications the Referee made findings which in effect overruled them and entered the order dismissing the specifications and discharging the bankrupt.

Marcus had been the sole stockholder, president and principal officer of P. M. Undergarment Corporation and controlled its affairs. The P. M. Undergarment Corporation was adjudicated a bankrupt in 1953 and petitioner was duly elected its Trustee in Bankruptcy. As such Trustee petitioner obtained a judgment of $88,000 against Marcus which was listed by Marcus in his schedules in the instant proceeding and represented considerably more than half of his scheduled non-tax liabilities.

There were two specifications of objection passed upon by the Referee, others having been withdrawn. The first alleged that discharge was barred by § 14 sub. c(6) of the Bankruptcy Act, 11 U.S.C.A. Chap. 3, § 32, sub. c(6), because, in the bankruptcy proceedings of P. M. Undergarment Corporation, Marcus had refused to answer material questions approved by the Court. The second alleged that discharge was barred by § 14, sub. c(3) of the Act, 11 U.S.C.A. Chap. 3, § 32, sub. c(3), since Marcus had obtained property by making a materially false statement in writing concerning his financial condition.

As to the first specification.

At the adjourned first meeting of the creditors of P. M. Undergarment Corporation on May 26, 1953, Marcus was examined as a witness called by the Trustee and was asked a number of questions relating to the property and affairs of the bankrupt. The questions were plainly material to the proceedings and concerned matters on which he, as president and in sole control of the corporation, must have had knowledge. Marcus refused to answer practically all of them pleading privilege against self-incrimination. The questions were then specifically approved by the Referee as to both form and merits and Marcus was directed to answer. He still refused to answer upon the same grounds. Petitioner claims in its first specification that these acts barred Marcus' discharge under § 14, sub. c(6) of the Bankruptcy Act.

Section 14, sub. c, provides that the Court shall grant the discharge unless satisfied that the bankrupt has committed any of the acts specified in subdivisions (1) through (7) of that sub-section. The act specified in Subdivision (6) of § 14, sub. c, is that the bankrupt has "in the course of a proceeding under this Act refused to obey any lawful order of, or to answer any material question approved by, the court."

It is plain that Marcus refused to answer a number of material questions approved by the Court in the P. M. Undergarment proceeding. The question is whether such refusal barred his discharge under the circumstances of this case.

The learned Referee concluded his discharge was not barred because the refusal of Marcus to answer material questions approved by the Court had taken place in the course of the bankruptcy proceedings of P. M. Undergarment Corporation and not in the bankruptcy proceedings of Marcus himself. He felt constrained to reach this conclusion on

the basis of the opinion of the Court of Appeals of this Circuit in Raphiel v. Morris Plan Industrial Bank of New York, 2 Cir., 146 F.2d 340, 341, which stated that its previous decision on this subject in In re Lesser, 2 Cir., 234 F. 65, was overruled as an "obviously unsound precedent". This, the Referee felt, indicated the correctness of the decision of the District Court in the Lesser case, D.C., 232 F. 368, which had been reversed by the Court of Appeals in 234 F. 65. As he construed the holding of the District Court in the Lesser case he felt that it bound him to hold that the discharge of bankrupt could not be barred unless he had refused to answer questions in his own personal bankruptcy proceeding.

I disagree with the conclusion reluctantly reached by the Referee. I think that the Bankruptcy Act bars discharge of the bankrupt under the circumstances of this case. It does not seem to me that either the Raphiel case or the decision of the District Court in the Lesser case compels any different conclusion.

Section 14, sub. c(6) provides that refusal to answer material questions "in the course of a proceeding under this Act" bars discharge. The bankruptcy proceeding of the P. M. Undergarment Corporation was certainly "a proceeding under this Act." The bankrupt refused to answer material questions approved by the Court in the course of that proceeding. There is nothing in the literal language of the statute precluding barring of discharge under these facts.

Moreover the refusal to answer in the case at bar took place in the bankruptcy of a corporation of which the bankrupt was the president, director and sole stockholder, and the affairs of which he. controlled. Section 7, sub. b, of the Act, 11 U.S.C.A. § 25, sub. b, provides that:

"Where the bankrupt is a corporation, its officers, members of its board of directors or trustees, * * * its stockholders * * *, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt by this Act."

.The duties of the bankrupt required to be performed by officers of a bankrupt corporation under § 7, sub. b, are specified in § 7, sub. a, which provides in subdivision (10) that the bankrupt shall:

"at the first meeting of his creditors, * * *, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate."

Marcus, in the bankruptcy of his wholly owned and controlled corporation, in refusing to testify as to the material questions approved by the Referee, failed and refused to perform one of the duties expressly imposed upon him by the Bankruptcy Act itself as the principal and directing officer of the bankrupt corporation.

The judgment creditor of Marcus who is objecting to his discharge is the Trustee in Bankruptcy of that corporation having a judgment against Marcus individually for some $88,000 which plainly arose out of Marcus' dealings with the corporate bankrupt.

This case does not present the broad question of whether a bankrupt is barred from discharge because at any prior time, or under any circumstances, or in any proceeding in bankruptcy other than his own, the bankrupt refused to answer material questions. The question here is whether the bankrupt's discharge is barred where he refused to answer material questions in the course of the bankruptcy proceeding of a corporation which he wholly owned and controlled, in which he had the duty under the Act as the principal officer to answer such questions, and where he was personally indebted to a judgment creditor who is Trustee in Bankruptcy of that corporation upon a large debt arising out of his dealings with the corporation.

As I view them, neither the Raphiel or Lesser cases hold that the answer to the

question presented here should be to discharge the bankrupt.

In the Raphiel case objections were made to the discharge of the bankrupt in his personal bankruptcy proceeding in 1943 upon the ground that it was barred under § 14, subdivision c(1) of the Bankruptcy Act because he had committed a crime punishable by imprisonment under then § 29 of the Act, now 18 U.S.C. § 152. The crime for which bankrupt had been convicted was the fraudulent concealment of assets from his Trustee in Bankruptcy in a prior bankruptcy proceeding in 1928, and the destruction of documents relating to his affairs as a bankrupt in that proceeding. No application for discharge had been made or granted in the 1928 proceeding. The bankrupt had listed in the 1943 proceeding both his debts incurred since the 1928 proceeding, and his scheduled debts in the 1928 proceeding.

The Referee denied discharge as to all creditors of the bankrupt, both those whose claims had been filed in the 1928 proceeding and those whose claims had arisen subsequent thereto. The District Court affirmed. The Court of Appeals reversed, holding that the bankrupt should be granted discharge from all debts except those involved in the 1928 proceeding, but that he was barred from discharge as to the 1928 debts.

The Court stated, 146 F.2d at page 340:

"Under § 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, there are seven grounds for refusing a discharge. Where a discharge is barred under § 14, sub. c(2–7) because of a wrongful act of the debtor, a future discharge will be denied only in regard to those who were creditors at the time that the wrongful act occurred, or became creditors within the time specified by the Act. But the doctrine adopted by the district court would prevent the discharge in bankruptcy

as to all creditors for all time when the wrong committed is a bar under § 14, sub. c(1). Neither § 14, sub. c nor any other provision of the Act makes such a differentiation, and there is nothing in the legislative history to justify it. We cannot believe that Congress had any such intention."

This is the rationale of the Raphiel case—that a bar to discharge will be enforced only as to creditors who might have been affected by the wrongful acts forming the basis of the bar. The holding of the case goes no farther than this and does not govern the situation now before me.[1]

The Court of Appeals went on to say that its earlier decision to the contrary in In re Lesser, supra, was wrong and "we hereby overrule it" as "an obviously unsound precedent." The Lesser case had for more than twenty years stood for the proposition that a bankrupt's discharge was barred if he had committed an offense punishable by imprisonment as described in § 14, sub. c(1) of the Act, even though such Act had not been committed in his own bankruptcy proceeding. Did the Court of Appeals by so overruling Lesser make a determination which compels the granting of a discharge under the circumstances of the case at bar? I do not think it did.

The facts in the Lesser case did not parallel those in the case at bar. There the bankrupt had committed perjury in the bankruptcy proceedings of two corporations. At one time he had been a Director of one of them and he had had financial relations with the second. It did not appear, however, that he had been a director at the time the corporate petition in bankruptcy had been filed, and there is no indication as to what, if any, relationship there was between the corporate bankruptcy proceeding and his personal bankruptcy proceeding, or that any creditor in the bankruptcy proceeding of either of the corporations was a

---

1. The criticism of the Raphiel case in Collier on Bankruptcy (14th Ed. 1956), Vol. 1, p. 1303, seems to be based, in part at least, on a misunderstanding of the scope and effect of the decision.

creditor in the bankrupt's own proceeding. Judge Learned Hand, then District Judge, in the decision reversed by the Court of Appeals in 234 F. 65, held that the discharge of the bankrupt was not barred under § 14, sub. c(1) of the Bankruptcy Act because he had committed perjury in another and different proceeding not his own. Judge Hand stated that no perjury in a bankruptcy proceeding, other than that of the bankrupt himself, would bar discharge. He conceded that a literal reading of §§ 14 and 29 of the Bankruptcy Act might lead to a different result, but went on to say "but it is perfectly obvious that the bankrupt's discharge depends upon his conduct toward his own creditors, and not upon his general truthfulness." [232 F. 369.]

Thus, the reasons which impelled Judge Hand to reach the conclusion which he did on the facts before him, are similar to those which impelled the Court of Appeals in the Raphiel case to reach a similar conclusion on the facts before it. In neither case was there any showing of connection or relationship between the wrongful acts claimed to bar the bankrupt's discharge and the bankrupt's own proceeding or the creditors therein.[2]

As I view it, the rationale of the Raphiel case, and of the Lesser case in the District Court, is that the acts which are grounds for barring discharge must bear some reasonable relationship to the rights of creditors in the personal bankruptcy proceeding in which objection to discharge is made. There can be no doubt that they do so when they occur in the bankrupt's own proceeding. In contrast, as the Court of Appeals indicates in Raphiel, a wrongful act committed at any time in any proceeding, no matter how remote or unrelated, could not logically be a ground for barring discharge in a personal bankruptcy proceeding which bore no relationship to that in which the act was committed and where the creditors affected were entirely different. On the other hand, where, as here, the acts by the bankrupt were committed in the bankruptcy proceeding of a corporation wholly owned and controlled by him, and of which he was the principal officer, and the Trustee in Bankruptcy of that corporation is a judgment creditor in the bankrupt's own proceeding, the result logically should be different. I believe that the language of the Bankruptcy Act which bars a discharge where the bankrupt "in the course of a proceeding under this Act" has refused "to answer any material question approved by the court", both literally and in accord with its purposes should be construed so as to bar the discharge under these circumstances.

This view is not only consistent with Raphiel and the decision of the District Court in Lesser, but also with Schieffelin & Co., Inc., v. Herold, 2 Cir., 222 F.2d 262, where, with one Judge dissenting, the Court of Appeals, on the basis of the Raphiel case, held that the commission by the debtor of offenses punishable by imprisonment under the Bankruptcy Act in a prior proceeding in which he had been discharged ten years earlier were not a bar to his discharge, through confirmation of a plan, from debts which arose subsequent to the earlier proceeding.

The order of the Referee must therefore be reversed in so far as it dismisses the first specification and discharges the bankrupt.

As to the second specification.

In August 1952 Cantor Greenspan & Co. received a large order for merchandise from P. M. Undergarment Corporation. Since Cantor Greenspan had had no prior dealings with P. M. Undergarment Corporation its credit manager called and wrote to Marcus, the president of P. M. Undergarment Corpo-

2. It may be noted that Lesser was decided long prior to the Chandler Act amendments to the Bankruptcy Act in 1938 which provided that it was the duty of officers, stockholders and directors of a bankrupt corporation to perform the duties of the bankrupt in a corporate proceeding, June 22, 1938, Chap. 575, § 7 sub. b, 52 Stat. 848, as was In re Blalock, D.C.S.C., 118 F. 679, on which Judge Hand relied in the Lesser case.

ration, requesting a financial statement, and sent him their form for that purpose. Thereafter Marcus prepared and forwarded a financial statement of the corporation to Cantor Greenspan, and on the basis of the statement, and in reliance thereon, Cantor Greenspan delivered merchandise of the value of some $28,000 to P. M. Undergarment Corporation on Credit.

The financial statement so furnished was false, and known by Marcus to be false, in three major respects: (1) It stated the net worth of the corporation to be $119,822.37 instead of $4,762.71, as it actually was; (2) it stated the liabilities to be $239,868.30, whereas they actually were $405,463.80, and (3) it omitted a liability of $147,595.50.

The objecting creditor asserts that these facts show that Marcus had obtained property on credit by making a materially false statement in writing respecting his financial condition which barred his discharge under § 14, sub. c (3) of the Bankruptcy Act.

The Referee found in substance that Marcus had obtained property on credit by making this false financial statement in writing, and that the statement was not only false respecting the financial condition of P. M. Undergarment Corporation, but also respecting Marcus' own financial condition in so far as it reflected on the value of the stock which he owned. However, the Referee further found that the goods had been obtained solely on the credit of P. M. Undergarment Corporation who alone was liable therefor, and that Cantor Greenspan had relied on the falsely represented financial condition of P. M. Undergarment and not on the financial condition of Marcus. He held that the false financial statement relied on by Cantor Greenspan was not one "respecting his" (Marcus the bankrupt's) "financial condition", as required by § 14, sub. c(3) of the Bankruptcy Act, and that Marcus' financial condition was not a material inducement to the extension of the credit. The Referee therefore dismissed the second specification.

The Referee based these findings primarily on the testimony of Nelson, credit man for Cantor Greenspan, the sole witness for the objecting creditor, who testified as to the circumstances under which the credit was extended. Nelson stated on cross-examination that he had no information about the personal financial condition of Marcus other than the financial statement of P. M. Undergarment Corp. signed by Marcus as its president. He further testified that if he had known that the corporate financial statement was false he would not have granted credit to the corporation even had he received a statement respecting Marcus' personal financial condition which showed Marcus to have a large net worth. Under further questioning by the Referee, Nelson stated that he had relied on P. M. Undergarment to pay the debt but, as was usual when extending credit, he also relied on the honesty and way of management of the principal, who was Marcus.

Section 14, sub. c(3) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(3), bars the discharge of the bankrupt if he has "obtained money or property on credit * * * by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition". The words "respecting his [the bankrupt's] financial condition" were first placed in the Act by the Act of May 27, 1926, Chap. 406, § 6, 44 Stat. 662, 663. Prior to that amendment the Bankruptcy Act had provided that a discharge was barred if the bankrupt had "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person". The 1926 amendment enlarged the circumstances barring discharge so as to include situations where the debtor had promulgated materially false financial statements through commercial and trade agencies which had not been given to a "person * * * for the purpose of obtaining

credit from such person". Brown's Guide, p. 15, Appendix. The amendment also added the modifying phrase "respecting his financial condition" to the words "materially false [financial] statement in writing".

Levy v. Industrial Finance Corp., 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572, dealt with the denial of the discharge of a bankrupt on the grounds specified in § 14, sub. b(3) of the Bankruptcy Act as it read prior to the 1926 amendment. The bankrupt was president of, and managed and controlled a corporation to which he had made large advances, and with his sister-in-law owned more than two-thirds of its stock. He had obtained a large loan to the corporation on the basis of a statement in writing, known by him to be false, which very materially overstated its assets. Objection was made to his discharge in his personal bankruptcy on the ground that he had obtained money on credit upon a materially false statement in writing made by him to the lender for the purpose of obtaining credit from the lender. The Supreme Court held that he was barred from discharge in his personal bankruptcy even though the money which had been so obtained went to the corporation and not to him, and the false statement was purported to be solely one as to the financial position of the corporation.[3] The Court stated, 276 U.S. at page 283, 48 S.Ct. at page 298:

"It would seem that so far as policy goes there is no more reason for granting a discharge to a man who has fraudulently obtained a loan to a corporation which is owned by him and in which his interests are bound up than for granting one to a man who has got money directly for himself. * * * we cannot think it possible that the statute

should be taken to allow an escape from its words, fairly read, by the simple device of interposing an artificial personality between the bankrupt and the lender."

The Court went on to point out that the amendment of 1926 served to limit the bars to a discharge more narrowly by the change of the wording of § 14, sub. c(3) to "a materially false statement * * * respecting his financial condition", but did not attempt to construe that language.

Thereafter the language of the 1926 amendment, to which the Supreme Court had referred, was construed by the Court of Appeals for the First Circuit in Wilensky v. Goodyear Tire & Rubber Co., 67 F.2d 389. There the bankrupt had been the owner of all of the stock of the Interstate Transit Company and had issued in the name of that company a statement in writing which was materially false in several important respects. Credit had been extended to the Interstate Company partly in reliance upon the false statement and partly in reliance upon the endorsement of the bankrupt. The objector to the discharge was the one who had extended the credit.

The Court pointed out that the case before it was different from the Levy case since the bankrupt had owned all the stock of Interstate, whereas in Levy he had owned only a portion of it with his sister-in-law. It held that the false financial statement issued in the name of the Interstate Transit Company was a statement respecting the bankrupt's own financial condition which barred his discharge within the meaning of § 14, sub. c(3). It stated 67 F.2d at page 391:

"Although the amendment in question may be held to tend to 'limit the bars to a discharge,' it clearly does not so limit them as to give a

3. The Supreme Court granted certiorari in the Levy case because of a conflict between the decision of the Circuit Court of Appeals for the Fourth Circuit in that case below, 16 F.2d 769, and the decision of this Circuit in In re Applebaum, 2 Cir., 11 F.2d 685. Applebaum had held in

substance that the discharge of a bankrupt could not be barred because he had obtained money for a corporation on the basis of a materially false financial statement in writing unless it was shown that he himself had obtained some part of the money.

discharge to a bankrupt whose statement as to his financial condition was made under all the conditions which we have stated as an officer of a corporation of which he owned all the stock and in which his interests are completely bound up. We think the Bankruptcy Act should not be taken to allow an escape from its intent by the device of 'interposing an artificial personality between the bankrupt and the lender.'"

See, also, In re Licht, D.C.E.D.N.Y., 45 F.2d 844, 846, cited with approval in Wilensky, which held that a false statement as to the condition of a corporation wholly owned and controlled by the bankrupt "was a statement of his financial condition to the extent that the corporation was an element of his property holdings, and it was nothing else" and barred discharge in his personal bankruptcy proceeding on that ground.

It seems plain that under what seems to me to be the sound reasoning of these cases the learned Referee in the case at bar was quite correct in finding that the false statement rendered by Marcus respecting the financial condition of P. M. Undergarment Corp. was a statement of Marcus' own financial condition within the meaning of § 14, sub. c(3) as it now reads. But I cannot agree with his conclusion that this statement, in so far as it concerned the financial condition of Marcus, was not an inducement to Cantor Greenspan in extending the credit.

The testimony of the credit man for Cantor Greenspan that even if Marcus had been worth a million dollars net it would not have extended the credit to P. M. Undergarment if it had known that the financial statement submitted to it was false, does not support such a conclusion. This testimony relates not to the financial statement which was furnished by Marcus and on which the credit was extended, but to the general financial condition of Marcus about which no statement at all was furnished or even requested.

The basis for finding that the false financial statement was a statement respecting Marcus' own financial condition was that it was a statement respecting the financial condition of the corporation of which Marcus was the sole stockholder and which he wholly and completely controlled. The statement as to the corporate financial condition and the statement as to Marcus' financial condition were one and the same thing. Reliance on this false statement resulted in P. M. Undergarment obtaining property on credit which, because of Marcus' sole ownership and control of that corporation, was for his exclusive financial benefit. To split the single false financial statement which was issued into two separate statements, one on which Cantor Greenspan relied, and the other on which it did not rely, is to create a fiction which disregards the very reason for holding it to be the statement of both. It disregards the realities which are that Marcus, by making false representations with respect to an element of his own property, was, by that fraud, enabled to add value to that element of his property.

One further consideration remains. In the Wilensky case the creditor objecting to discharge was the creditor who had extended credit on the basis of the materially false corporate financial statement signed by the bankrupt. This was also true in the Levy case. In the case at bar it appears that Cantor Greenspan, which extended the credit, is not a creditor of the bankrupt himself.

This raises the question as to what limits, if any, in terms of time and remoteness of transaction, must be placed on the bar to discharge set forth in § 14, sub. c(3). It may well be that a false financial statement respecting the condition of a corporation wholly owned and controlled by the bankrupt, made by him many years before his personal bankruptcy occurred, and which could not have affected his present personal creditors, might be held not to bar discharge. That, however, is not now before me. In this case the Trustee in Bankruptcy of Marcus' wholly owned corporation, respecting which the false financial statement was issued by Marcus, is the judg-

ment creditor objecting to the discharge. This Trustee represents the creditors of the wholly owned corporation. Under these circumstances there is sufficient relationship between the wrongful act of the bankrupt in issuing this false financial statement and his presently pending personal bankruptcy proceeding to bar his discharge.

This seems to me to be in accord with the intent and policy of the Bankruptcy Act and is consistent with the reasoning of the Raphiel case to the effect that discharge is barred under § 14, sub. c, only where there is a reasonable relationship between the acts of the bankrupt claimed to bar discharge and creditors whose rights may have been affected by such acts.

The order of the Referee dismissing the specifications and granting discharge is reversed, and the findings in so far as they are inconsistent with this opinion are modified.

Settle order and findings on five days' notice.