**In the Matter of Max SIMON, Bankrupt.**
**No. 54622.**

United States District Court
E. D. New York.
April 5, 1960.

Samuel B. Weingrad, New York City, for Bankrupt.

Joseph D. Stim, Plainview, N. Y., Objecting Trustee.

RAYFIEL, District Judge.

The bankrupt seeks a review of an order made by Hon. Sherman D. Warner, dated January 20, 1960, which denied him a discharge.

The objecting trustee filed ten specifications of objection to the bankrupt's discharge. They were disposed of as follows: Specifications numbered 1, 4, 6, 7, 8, 9 and 10 were withdrawn; specifications numbered 2 and 3 were dismissed by the Referee after trial; specification numbered 5, as limited, was sustained by the Referee.

The specification, as sustained, reads as follows:

"The bankrupt committed an offense punishable by imprisonment as provided under Title 18 U.S.C. § 152 in that on or about February 7th, 1958, the Bankrupt did knowingly and fraudulently make a false oath and account in the above entitled bankruptcy proceeding in that he did state that Schedule A submitted by the Bankrupt with his bankruptcy petition contained a statement of all his debts according to the best of his knowledge, information and belief, when the said Schedule A listed as creditors only Sarah Levine as an unsecured creditor in the amount of $8,231.04; Dora Latsky, an unsecured creditor in the amount of $2,-000.00; Nathan Nelson a secured creditor in the amount of $28,327.83 and Clement J. Lipman, a secured creditor in the amount of $6,000.00; when in truth and fact * * * the Bankrupt is indebted to the Manufacturers Trust Co., New York, New York, in an amount of approximately $1,000.00 on a secured loan made by Manufacturers Trust Co. to Joan Holding Corp. on which the Bankrupt was co-maker on or about June 14th, 1957 in the original amount of $1848.00."

The record before the Referee discloses that the bankrupt was the sole stockholder of a corporation known as Joan

Holding Corporation, which borrowed the sum of $1848 from the Manufacturers Trust Company on or about June 14, 1957. The corporation obtained the loan for the purpose of buying a Volkswagen station wagon to be used in its business. The bankrupt and his wife, as President and Secretary respectively, of the corporation, signed a promissory note and a chattel mortgage covering the vehicle. They also signed the note individually, as co-makers. The bankrupt testified that he signed all of the papers in connection with the loan in blank, and that they consisted of at least six documents. The branch manager of the bank, a Mr. Magenheimer, admitted that at the time of its execution the chattel mortgage form was blank, but testified that the note and other documents had been filled in. According to the note and chattel mortgage the corporation was to make payments of $77 per month for a period of twenty-four months, commencing with July 14, 1957. On February 14, 1958, the date on which the bankrupt filed the voluntary petition in bankruptcy, there was a balance of $1,316.70 unpaid to the Manufacturers Trust Company on the note. This balance was subsequently paid, and the note and chattel mortgage satisfied. The bankrupt concededly did not include this obligation in his schedule of debts which was submitted with his petition in bankruptcy.

The trustee contended, and the Referee had found, that the bankrupt's failure to include this obligation in his schedules constituted a false oath in violation of Section 152 of Title 18 U.S.C., which barred his discharge.

The bankrupt, on the other hand, contends that the omission was an oversight on his part, and that it was neither knowingly nor fraudulently done, as is required by Section 152, supra. He alleges that he did not realize that he was personally liable on the promissory note since it was not filled in when he and his wife signed it, and that he had nothing to gain from leaving the debt out of his schedules since it was secured by the chattel mortgage.

The Referee has held that the burden of proving that he has not sworn falsely and recklessly is on the bankrupt, and that he has failed to meet that burden. The Referee states in his decision that "the bankrupt should not expect the court to believe that the indebtedness was of so little consequence to him that he forgot all about it when he signed and swore to his Schedules, for he admits that he had many conversations with Magenheimer (the bank manager) about the proposed application for the loan." (Matter in parenthesis added). The Referee then characterizes the bankrupt's testimony as "highly improbable under all the circumstances and facts in the case".

However, at the conclusion of the testimony which was taken in connection with this specification the Referee remarked at page 212 of the record, "I think on this particular specification that I will reserve decision, and have you submit a memorandum. *My reaction is that it was a pretty loosely handled transaction on the part of the officer of the bank.* Now, whether or not the omission is equivalent to a false oath under the statutory definition, I would like to consider that." (Matter in parenthesis and emphasis added). He remarked further at page 213, "*I think it is so loose that it is pretty hard to say that he committed a crime under Title 18.*" (Emphasis supplied). It therefore appears that after hearing the testimony the Referee had serious doubts as to whether there was a violation of Section 152, of Title 18.

As is pointed out in Collier on Bankruptcy, 14th Edition, Volume I, Section 14.28, at page 1331, "The bankrupt's schedule of debts is accompanied by his verified statement that the schedule 'is a statement of all my debts.' Consequently he is guilty of a false oath and may be denied a discharge by knowingly and fraudulently omitting the name of a creditor from this schedule. *It has been suggested, however, that the inference of fraudulent intent is not to be easily drawn from such an omission, the bankrupt having ordinarily little to gain*

*therefrom, since the omitted claim might not be discharged."* (Emphasis supplied).

■ The situation in the case at bar, in my opinion, was covered by Judge Galston in the case of In re Baker, D.C., 139 F.Supp. 646, at page 648, when he said, "Nothing was demonstrated which would disclose that the bankrupt had anything to gain from the omission of these two men as his creditors. It is equally clear that Kentile, Inc., the only creditor listed in his schedules, was not in the slightest degree prejudiced in this proceeding by the failure of the bankrupt to list Kazan and Rosen as co-creditors. The most that can be charged, it seems to me, against the bankrupt was a technical failure to list these two creditors, and giving incorrect testimony which the referee held to be intentionally false. What Judge Patterson said in In re Burroughs, D.C., 18 F.Supp. 921, 922, in a similar situation, I find very convincing. Judge Patterson said: ' * * * The false oath that will prevent discharge must be one made "knowingly and fraudulently." Section 14, sub. b, as amended 11 U.S.C.A. § 32, sub. b, and section 29, sub. b. of the Bankruptcy Act, 11 U.S. C.A. § 52, sub. b; In re Slocum, 2 Cir., 22 F.2d 282. Where a bankrupt omits an asset of substantial value from his schedules, the inference that the omission was fraudulent is not hard to draw; one's immediate reaction is that the omission was deliberate, in the hope of concealing the asset. *Where a bankrupt fails to list a liability, it is not so easy to conclude that the omission was made fraudulently. Generally the omission of a liability is to the disadvantage rather than the advantage of a bankrupt, for it may well result in the debt not being discharged. Unless the facts are unusual, the natural inference is that the omission to list a liability in schedules came about through mistake or oversight.* In re Crenshaw, D.C.Ala., 95 F. 632. See, also, In re Applebaum, 2 Cir., 11 F.2d 685; Sharcoff v. Schieffelin & Co., 2 Cir., 70 F.2d 725.' See also In re Barry, D.C., 52 F.Supp. 496; In re Taub, 2 Cir.,

98 F.2d 81; In re Lovich, 2 Cir., 117 F.2d 612 [133 A.L.R. 673]."

I therefore find that the Referee's order as to specification No. 5 should be reversed and the bankrupt granted his discharge.

Settle order on notice.