**In re HAGGERTY.**
**No. 98, Docket 20778.**

Circuit Court of Appeals, Second Circuit.
Jan. 27, 1948.

Max Schwartz, of New York City, for objecting-creditor-appellant.

Vine H. Smith, of Brooklyn, for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is a creditor who filed specifications of objection to the discharge of the appellee in proceedings in bankruptcy in the District Court for the Eastern District of New York on the latter's voluntary petition. One of the specifications was sustained by the referee who then denied the discharge. The district judge reviewed the findings and granted the discharge. This appeal followed.

The specification so disposed of below, which is the only one presently relied on, alleged, in so far as now need be stated, that the bankrupt had before filing his petition in bankruptcy made a written statement of his financial condition to the National City Bank of New York for the purpose of obtaining money on credit and that the statement was materially false. The allegedly false representations were that he owned certain real estate at 130 Kenilworth Place, Brooklyn, N. Y., on which the only lien was a mortgage of $6,975 to the Flatbush Savings Bank of Brooklyn, and that he had no other loans outstanding. The specification further charged that the bankrupt had stated that he "was making no installment payments and that all taxes, assessments and fire insurance were up to date except water taxes of $25.00 due February 1st, 1941, whereas in fact the bankrupt was indebted to Frederick G. Quern in a sum in excess of $5000 which obligation was incurred by the bankrupt in connection with the purchase of the premises of 130 Kenilworth Place, Brooklyn, N. Y., and which purchase constituted a lien against the premises, evidenced by the unrecorded bond and mortgage."

The evidence established beyond dispute that the written statement dated February 4, 1941 was given to the National City Bank on February 5, 1941 in support of the bankrupt's application for an unsecured loan of $204, which he then obtained and repaid before his petition in bankruptcy was filed. The additional pertinent facts as shown by the findings, amply supported by the proof, are that when the bankrupt made the application to the bank and obtained the loan he stated therein that he had purchased the real estate in July, 1937 for $10,500 and that his only debts were one secured by the mortgage mentioned and one of $25 for a water bill. He then owed the appellant over $5000 on which he was bound to pay interest, and this debt was evidenced by an unrecorded mortgage on the real estate. The bankrupt's explanation of his failure to list his debt to the appellant was in substance (1) that he considered the appellant his partner in the purchase of the real estate because, as was undisputed, it was bought under the following circumstances: the bankrupt had an option to buy the property which he thought would appreciate in value; the appellant agreed to, and did, advance the remainder of the purchase price above the mortgage to the Flatbush Savings Bank; the two agreed that the property should not be sold for less than a stated price and when sold the appellant should be paid a percentage of the profit made in addition to what he had advanced to purchase it. And (2) that he told a Mr. Gallagher, the representative of the National City Bank to whom he gave the written statement, that he had borrowed some money from members of his family which he did not have to repay until able to do so and was told that the bank was not interested in family "loans" and not to put them in the statement. Gallagher testified that he could recall no conversation with the bankrupt about "his being indebted on personal loans to friends or relatives" but that if he had had one he would have told him that family "loans" need not be included in the application. What the witness meant by this was later explained by him as follows:

"Counselor, these applications are granted on condition that the borrower makes monthly payments and the question regarding applications or loans outstanding here

or elsewhere is to guide the credit man in determining whether the amount to be paid by the applicant to this Bank, together with other obligations, is more than what he can carry. If he owes monies to individuals where there is no definite promise to pay or there is no instalment required, either monthly, weekly or semi-annually, then as the basis of determining that question of this particular applicant that situation is immaterial and irrelevant * * *."

That the omission of his debt to the appellant made the bankrupt's application to the bank a false written statement of his financial condition is self evident. The referee then was satisfied there were reasonable grounds for believing that the bankrupt had committed an act which would prevent his discharge,[1] and therefore put the burden upon the bankrupt to prove that he had not done so.

■ He could not, of course, prove that he had not made the statement and delivered it to the bank when he applied for the loan. He could not prove that his statement was actually truthful. He was left with only two alternatives, to show that he had had no intent to deceive the bank,[2] or that the statement was not materially false. The district court believed that the bankrupt had shown he had an honest intent, because he testified that he had told the bank about his family "loans." But this testimony seems wholly irrelevant to the issue. Indeed, by telling the bank about these "loans," but not about his debt to the appellant, it would reasonably seem that the bankrupt meant to lull the bank into a false sense of security or to convince it that he was disclosing the whole truth. In any event, the statement having been proved false, the burden was on the bankrupt to show his good faith. E.g., In re Frumkin, supra. The district court's conclusion that he had met this burden we think clearly wrong.

■ The bankrupt could have shown that the statement was not materially false by proving his debt to the appellant would not have affected the action of the bank, that is, that the bank did not rely on his financial condition as represented in the application when it made the loan. The referee obviously believed that the bank did rely upon it, while the district judge seems to have reversed partly on the ground that the evidence left reliance at least uncertain and the objecting creditor failed to prove it. The judge could have come to this conclusion only on the theory that the burden was on the objecting creditor because the evidence in support of his specification was insufficient to show reasonable grounds for believing the application false in any material respect. But it would seem that a representation that the borrower owned real estate worth some $3000 in excess of all his debts would clearly be deemed by the bank a material factor in deciding whether to make the loan. Moreover, as Gallagher testified, the bank wanted to know whether the monthly payments the borrower would have to make on the loan "together with other obligations" would be more than he could carry. The liability for interest payments, at least, would fall within the category of "other obligations." Thus, as a matter of law, there were reasonable grounds for believing that the bankrupt had committed an act which would bar his discharge and the district court's ruling to the contrary was er-

---

[1] The statute, Sec. 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, so far as presently relevant, provides: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

[2] See, e.g., In re Frumkin, 2 Cir., 82 F.2d 290; Schapiro v. Tweedie Foot Wear Corp., 3 Cir., 131 F.2d 876, 878; In re Schwartz, 7 Cir., 133 F.2d 216; Third Nat. Bank v. Schatten, 6 Cir., 81 F.2d 538.

roneous. This being true, the burden was on the bankrupt to overcome the prima facie case established by the objecting creditor. See In re Holzman, 2 Cir., 69 F.2d 828. Having failed to meet this burden, he could not obtain a discharge. Morris Plan Bank Industrial of New York v. Parker, 79 U.S.App.D.C. 164, 143 F.2d 665; Federal Provision Co. v. Ershowsky, 2 Cir., 94 F.2d 574; In re West, 7 Cir., 158 F.2d 858. And, as we said in In re Ernst, 2 Cir., 107 F.2d 760, it is of no significance that the creditor to whom the bankrupt gave the materially false written statement has been paid and is not objecting to the discharge.

Order reversed and discharge denied.