Joseph Edward BECKER, Bankrupt,
Appellant,

v.

Audrey D. SHIELDS, Objecting Creditor,
Appellee.

No. 15526.

United States Court of Appeals
Eighth Circuit.

Oct. 26, 1956.

Richard A. Erickson, Kansas City, Mo., for appellant.

Rodger J. Walsh, Kansas City, Mo. (Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.

SANBORN, Circuit Judge.

Audrey D. Shields, a creditor of the appellant, bankrupt, on May 24, 1955, filed objections to his discharge, on the grounds: (1) that he had obtained money or property on credit by making a materially false statement in writing on or about November 11, 1952, in an application for credit to the Westport Bank, of Kansas City, Missouri, in which he stated, "I hereby certify that * * * there is no suit or judgment pending against me," when he knew there was a suit pending against him in the Circuit Court of Jackson County, Missouri, entitled "Audrey D. Shields vs. Joseph E. Becker," filed October 11, 1951; (2) that on or about March 11, 1953, the bankrupt obtained money or property on credit by making a materially false statement in writing to the City National Bank & Trust Company, of Kansas City, Missouri, in an application for credit under the Federal Housing Act, by stating that he had listed all his debts, when he had failed to list his indebtedness to the objector.

The Referee in Bankruptcy, after a hearing, overruled the objections to the discharge, and the objector petitioned for a review of the Referee's order. The District Judge vacated the order.

The bankrupt has appealed in forma pauperis from the order of the Judge on the ground that the findings of the Referee were not clearly erroneous and that his order was not subject to reversal on review.

The record shows that the bankrupt, a general contractor in Kansas City, Missouri, on October 28, 1950, gave his promissory note to John G. Shields, the deceased husband of the objector, for $2,042.95, payable in monthly installments of $50.00 commencing January 1, 1951; and that the objector on October 11, 1951, after the death of her husband, brought suit on the note. The bankrupt filed his answer in the suit on or about November 7, 1951, denying liability. The suit was tried April 29, 1953, and resulted in a judgment against the bankrupt in the amount of $2,117.95.

On November 12, 1952, the bankrupt and his wife executed a note to "Jerry Smith Buick" for $2,625.30, which was secured by a chattel mortgage covering a 1952 Buick automobile purchased from that concern. The note was payable at the rate of $87.51 a month, commencing on December 15, 1952. "Jerry Smith Buick" procured from the bankrupt an "Application for Credit to Westport Bank, Kansas City, Mo." The application was dated November 11, 1952, and was upon a printed form which, above the signature of the bankrupt, contained the printed words, "This statement made for the purpose of obtaining credit and I hereby certify that all of the statements made above are true and complete and there is no suit or judgment pending against me." While the application for credit indicates that the unpaid balance due on the purchase of the Buick car was $2,282.93, and bears no other signature than that of the bankrupt, the note, which apparently evidenced the balance due on the purchase price of the car, was for $2,625.30 and was signed by "Joseph E. Becker" and "Hellen A. Becker." The chattel mortgage recites that Hellen A. Becker is the mortgagor who is indebted to Jerry Smith Buick, although both she and her husband signed the note and the chattel mortgage. The note, with the chattel mortgage attached, was endorsed without recourse to the Westport Bank, and, at the time of the hearing on the objections to the bankrupt's discharge, had been paid in full.

The bankrupt and his wife on March 11, 1953, signed a "FHA Title I Credit Application (Property Improvement Loan)," to obtain from the City National Bank & Trust Company, of Kansas City,

Missouri, a loan of $297.00, payable in installments over 36 months. This application was on a printed form which called for a statement of "Debts—List fixed obligations, installment accounts, mortgages, FHA Loans and debts to banks, finance companies and Government agencies." The bankrupt did not list as a debt the note upon which the objector had brought suit, and which, according to the bankrupt's testimony, he did not consider a "fixed obligation." The application for credit was not signed at the Bank, but was procured at the bankrupt's residence by the salesman for the dealer supplying the product (apparently electrical equipment) for the purchase of which credit was being sought. The dealer submitted the application to the Bank. At the time of the hearing on objections to the discharge, the loan which the Bank made upon the application had not been in default, and there was an unpaid balance of $75.77.

There was evidence at the hearing before the Referee to the effect that the banks relied upon the statements in the applications made to them by the bankrupt, and were not advised of the pendency of the suit brought against him by the objector or of the existence of the Shields note upon which the suit was based. There was no unequivocal evidence that the loans made by the banks would not have been made had the bankrupt included in his applications for credit the information the omission of which the objector contends was fatal.

It seems apparent, however, that the objector made a prima facie case in support of her objections under Section 14, sub. c(3) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(3), which, so far as pertinent, provides:

"(c) The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit * * * by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * *: *Provided,*

That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

See Industrial Bank of Commerce v. Bissell, 2 Cir., 219 F.2d 624.

The testimony of the bankrupt was, in substance, that he had no intention of falsifying his applications for credit; that he did not realize that the application made to the Westport Bank, in connection with his purchase of an automobile, called for a statement of the pendency of the objector's suit against him; that he did not read the application; that he then believed that he had a good defense to that suit and was not indebted upon the note, and had been so advised by counsel who represented him in that suit; and that, with respect to his application for the FHA Title I loan, he had told the salesman, who took the application, of the pendency of the Shields suit, but was urged to sign the application regardless.

Counsel who had represented the bankrupt in the objector's suit on the note testified that the bankrupt had a good defense to the note, but that, because of the death of the objector's husband, the bankrupt was prevented from giving testimony to establish his defense.

The conclusion and ruling of the Referee was as follows:

"On the basis of the evidence we have heard this court in conscience could not find that this bankrupt willfully and deliberately, with the intention to defraud the banks which we have mentioned, made these statements which have been introduced in evidence. The objecting creditor has failed to establish the willful intention on the part of the

bankrupt to commit a fraud and to cheat the two banks.

"Therefore, the court finds and holds that the objections to the discharge should be overruled, and it is so ordered."

It is true, as the District Judge pointed out, that the facts that neither bank was objecting to the bankrupt's discharge or claiming that it was in any way defrauded by him, that one bank had been paid in full, and that the loan made by the other—upon which a small balance remained unpaid—was not in default, did not preclude the objector from opposing the discharge. The right to object to a discharge of a bankrupt is not limited to the defrauded creditor, and the policy of the statute is to deny a discharge to a bankrupt who has been shown to have defrauded any creditor by means of a materially false financial statement. Gilpin v. Merchants' Nat. Bank, 3 Cir., 165 F. 607, 610, 20 L.R.A., N.S., 1023; Levy v. Industrial Finance Corporation, 276 U.S. 281, 283, 48 S.Ct. 298, 72 L.Ed. 572; In re Ernst, 2 Cir., 107 F.2d 760; In re Haggerty, 2 Cir., 165 F.2d 977, 980; 6 Am.Jur., Bankruptcy, § 708, page 963.

As we see it, the controlling question for decision in this case is whether the issue tried before the Referee was, under the evidence, an issue of fact for him to decide, or whether the evidence was all one way or so overwhelmingly one way as to compel a ruling that, as a matter of law, the bankrupt had deliberately defrauded the banks, or either of them, by failing to disclose in his applications for credit the existence of the Shields note or the pendency of the suit upon it.

It is, no doubt, true that ordinarily one who has obtained credit as the proximate result of making a knowingly false financial statement will not be heard to say that he did not intend to deceive. See Cleland v. Iowa Loan & Trust Co., 8 Cir., 260 F. 653.

The Referee could have decided that, under the evidence, the objections to the discharge were well taken and should be sustained, but we think he was not compelled to do so. The evidence tending to establish that the proximate cause of the bankrupt's being able to obtain credit from the banks was his failure to disclose the existence of the Shields note and the pendency of the objector's suit, was, in our opinion, not conclusive. A false financial statement, to bar a discharge, must be shown to have been relied upon. Bank of Monroe, of Monroe, Neb., v. Gleeson, 8 Cir., 9 F.2d 520; In re Haggerty, supra, at page 979 of 165 F.2d; In re Leonard, D.C.S.D.Cal., 122 F.Supp. 214, 218.

Nor can we say that the question of intent was, under the evidence, so free from doubt as to make it a question of law for the District Judge or for this Court on review. We think that a man such as the bankrupt, if he honestly believed that he was not indebted upon a note and that he had a meritorious defense to a suit upon it, would not necessarily be guilty of an intent to defraud if he failed to disclose the existence of the suit and the note in applying to a bank, through an automobile dealer or a dealer in electrical appliances, for a secured loan to cover deferred purchase payments. A bankrupt is entitled to a discharge unless the evidence clearly shows that he has committed an act which bars it. Farmers' Sav. Bank of Grimes, Iowa, v. Allen, 8 Cir., 41 F.2d 208, 212.

The question of intent, if there can be any substantial doubt about it, is a question of fact. "Triers of fact are constantly called upon to determine the intent with which a person acted." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659.

Our conclusion is that the District Court erred in vacating the order of the Referee. See and compare, Rasmussen v. Gresly, 8 Cir., 77 F.2d 252; Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 111 A.L.R. 736; Krinsley v. United Artists Corp., 7 Cir., 225 F.2d 579, 582–583.

The order appealed from is reversed.