In the Matter of George B. SCHATZ,
d/b/a The Tides, Bankrupt.
In the Matter of David KAHN, Bankrupt.

Nos. 61–B–566, 61–B–926.

United States District Court
E. D. New York.

Feb. 17, 1964.

Nathaniel S. Rudes, Lynbrook, N. Y.,
for the bankrupt George B. Schatz, etc.,
by Edward L. Dubroff, Brooklyn, N. Y.

Newman, Aronson & Neumann, New
York City, for David Kahn, bankrupt, by

Edward L. Dubroff, Brooklyn, N. Y., for the motion.

I. Robert Bassin, Jamaica, N. Y., for objecting creditor, in opposition.

RAYFIEL, District Judge.

These are two petitions, one filed by each of the bankrupts herein, to review two orders, dated August 23, 1963, made by Hon. William J. Rudin, Referee in Bankruptcy, wherein he sustained Specification "1" of each of the objections to their discharges filed by a creditor. The proceedings before the Referee were consolidated and were tried together. The objector has petitioned for the review of said orders on the ground that the Referee erred in dismissing the remaining specifications of objection.

Prior to the bankruptcy George B. Schatz, a lawyer, and David Kahn were co-partners doing business as "The Tides". They operated a nursing home under that name at 640 West Broadway, Long Beach, New York, under a lease for twenty years, eleven months and twenty-one days, dated July 10, 1957, between the owners of the premises and Neptune Shore Corporation, which had been assigned to the bankrupts on July 10, 1957.

On August 30, 1957 the bankrupts executed and delivered an assignment of the said lease to Jacob Sohmer, Alexander Sohmer and Morris Sohmer as security for the repayment of a loan of $66,000 made by them to the bankrupts. On the same day the bankrupts also executed and delivered to the Sohmers a mortgage on the said lease to further secure the payment of the aforesaid amount on February 28, 1958. The parties agreed that the mortgage would not be recorded.

On January 3, 1958 the bankrupts and Alexander Schaffer, a lawyer and the objector herein, entered into an agreement under the terms of which Schaffer agreed to "advance" to the bankrupts the "further" sum of $20,000 on the signing thereof. He had theretofore advanced the sum of $5,000 to them. The agreement further provided that he was to advance an additional sum of $25,000 when "he wishes or when called upon by Kahn and Schatz to do so on five days notice", and he agreed to obtain "further" bank credits for them in the sum of $20,000. He had previously obtained bank credits of $30,000 for the partnership.

The agreement of January 3, 1958 listed the liabilities of the partnership, including an item designated as follows: "Due to loan creditors, including the Sohmer loan, approximately $70,000", and also provided that "Schaffer agrees that if it becomes necessary to reduce the Sohmer loan on February 28, 1958 that he will provide bank credits or cash of an additional $25,000 therefor."

The said agreement also contained the following provision "1. Kahn and Schatz hereby represent and warrant to Schaffer as follows:

"(a) That they are and have been doing business as co-partners under the firm name and style of The Tides at 640 West Broadway, Long Beach, New York, and as such co-partners, are the owners of a certain indenture of lease dated the 10th day of July, 1957, made between BENJAMIN DUHL and LEWIS LUBITZ as lessors and NEPTUNE SHORE CORPORATION as lessee, affecting the building and premises known as The Tides, also known as 640 West Broadway, Long Beach, New York, by assignment from said Neptune Shore Corporation dated the 10th day of July, 1957, *which lease has not been further assigned and has not been modified, or encumbered.*" (Emphasis mine) The underlined portion of the quoted paragraph was incorporated in the agreement at the insistence of Schaffer's attorney.

The agreement further provided, in paragraph 1d.) 5 thereof, that "An itemized list of all of the liabilities as of 12/31/57 is annexed hereto and made a part hereof." and went on to say "(e) That there have been no changes in the aforesaid debts and obligations since December 1, 1957 except in the ordinary course of operation of the business and

except monies advanced by Schaffer and certain bank credits obtained through Schaffer, which monies and credits have been used to make payments on the obligations above set forth."

In accordance with the said provision the bankrupts delivered to Schaffer a separate handwritten statement of the liabilities of the partnership which contained the following certification: "This is a complete statement as reflected in the books and I represent that there are no other liabilities outstanding which can exceed $1500—(signed) G. B. Schatz and David Kahn attached to contract dated Jan. 3, 1958 G.B.S.D.K."

No mention is made in the agreement or the list of liabilities of the assignment of the lease to the Sohmers or of the mortgage thereon which they held as security for their loan, both of which had been executed and delivered by the bankrupts some four months prior thereto.

Pursuant to the terms of the agreement, and in reliance thereon, Schaffer advanced the additional sum of $20,000 to the bankrupts and obtained bank credit of $20,000 in their behalf from the Franklin National Bank on a note endorsed by him. On February 10, 1958, he learned of the assignment of the lease and the mortgage thereon and thereupon refused to advance the further sum of $25,000 provided for in the agreement.

Thereafter there was an exchange of letters among the parties in which Schaffer insisted that at the time of the execution of the agreement he had no knowledge of either the assignment or the mortgage, and that he had relied on the bankrupts' representation that they were the owners and holders of the lease and that it was unencumbered.

The parties subsequently entered into various agreements modifying the agreement of January 3, 1958, the last of which, dated December 29, 1959, provided that "All previous agreements made between Schatz and Kahn on the one hand and Schaffer on the other hand are hereby cancelled and terminated."

The "Tides" Nursing Home continued to have financial difficulties and ultimately the landlord dispossessed it from the premises. On July 14, 1961 Schatz filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on the same day. On November 17, 1961 Kahn filed his voluntary petition and was adjudicated a bankrupt on that day.

Schaffer filed Specifications of Objection to the discharges of both bankrupts. As to Schatz, the first specification charged "that while engaged in business as a partnership the bankrupt obtained for such partnership money or property on credit by making or publishing or causing to be made or published a materially false statement in writing respecting his financial condition or the financial condition of the partnership." It then recited the facts hereinabove set forth concerning the execution of the agreement of January 3, 1958 by the bankrupts.

The second specification was withdrawn during the hearing before the Referee. The third specification alleges that he had committed an offense punishable by imprisonment, as provided under Section 155 of Title 18 United States Code, in that he had made a false oath in connection with the schedules and statement of affairs filed by him, and that at the first meeting of his creditors he swore falsely that they were correct when in fact (a) he had failed to list ten creditors, (b) he had failed to list as an asset of the partnership, a Thomas Concerto Organ in his possession, and (c) he had failed to turn over to the trustee his law books and furniture located in his office in Long Beach, N. Y.

The fourth and last specification alleged that he had failed to keep and preserve books and records in connection with his law practice.

As to Kahn, the first specification repeated the first specification in the Schatz case. The second specification was withdrawn at the hearing and the third specification charged him with having committed an offense punishable by imprisonment as provided under Section 155 of

Title 18, U.S.C. This specification charged the bankrupt with making a false oath in connection with the schedules and statement of affairs filed by him in that he failed to set forth some eleven creditors therein.

Lengthy hearings were held before Referee Rudin. He sustained specification "1" as to both bankrupts and dismissed specifications "3" and "4" as to Schatz and specification "3" as to Kahn.

The bankrupts contend that the Referee erred in sustaining specification "1". They argue that Schaffer had knowledge of the Sohmer loan by the very terms of the agreement of January 3, 1958, and that it was immaterial that the lease had been mortgaged as security for the repayment thereof. They also argue that the said agreement gave Schaffer options to purchase an interest in the business and that therefore no credit was extended to them in reliance on the representations made in the agreement but, rather, that Schaffer was given the option to *INVEST* in the business if he so desired.

They cite as authority for the latter proposition the case of Matter of Morgan, 2 Cir., 267 F. 959. In that case the bankrupt obtained money from various *investors* upon a false statement made to them in a subscription receipt. The court there held, 267 F. at page 962, that

"the language of the statute limits the refusal to discharge to obtaining money or property *on credit* upon a materially false statement in writing by him to any person or his representative *for the purpose of obtaining credit from such* person. It is plain that the intention of Congress was to extend not the statute to all cases of false written statements *where credit happens to be given,* and the thought being to confine the statute to *cases where the decision to give credit was induced by the false statement. Such statement must be a financial statement, as distinguished from a mere misrepresentation.*

"[2] A debt fraudulently contracted by the bankrupt will not be released by his discharge. Therefore the debts in question, which the court below found were contracted fraudulently, may fall within this provision of the act. *Congress, however, never intended to refuse a bankrupt his release from all of his debts because he had contracted one or more fraudulently. The phrase 'for the purpose of obtaining credit' contemplates a statement fitted to such purpose. It is intended to mean 'to obtain money or property on credit.'* Each of the phrases in the statute must be given its appropriate meaning. The phrases 'on credit' and 'for the purpose of obtaining credit' should not be treated as redundant. The phrase 'upon a materially false statement' follows immediately after 'on credit,' and therefore it is apparent that Congress intended to qualify the whole clause, to 'obtain money or property on credit.' *We think it was intended to mean that the credit obtained upon a materially false statement required the falsity to be tested as to its materiality to the obtaining of the credit."* (Emphasis supplied).

The Morgan case, supra, is clearly distinguishable from the cases at bar. In the former the objectors were individuals who were *purchasing stock* in a company promoted by the bankrupt. In the cases at bar the agreement in question specifically refers to "advances" to be made by Schaffer and bank credits to be obtained by him in the bankrupts' behalf. It then gives him the *option* to purchase an interest in the partnership. Paragraph III(d) of the agreement, however, provides for the *repayment* of the advances if he should fail to exercise his option. There was *no* provision in the Morgan case for repayment to the *investors.*

Manifestly the bankrupts themselves considered the Schaffer "advances" as loans since the schedules filed herein by

both of them refer to the amounts due him as "moneys loaned." Schatz's schedules list the objector as follows "Alexander H. Schaeffer (sic) 3000 Hempstead Turnpike, Levittown, N. Y. 1958–60 (whether claim is contingent) No (nature) *Moneys Loaned* (amount) 62,000.-00." (Matter in parenthesis and emphasis added). Kahn's schedules list the objector in the same way except that they contain no amount under the column designated for that purpose.

■ Concededly Schaffer knew about the Sohmer loan for it is referred to in the agreement of January 3, 1958. However, the Referee found, and I agree with him, that at the time of the execution of said agreement the objector had no knowledge of the fact that the lease had been assigned and mortgaged as security for this loan. If he had known thereof his attorney would hardly have insisted, with his acquiescence, as he did, that there be added to the agreement the provision that the "lease *has not been further assigned* and has *not been modified or encumbered.*" (Emphasis mine). Why would the bankrupts, with knowledge of such assignment and mortgage, have permitted the insertion of such a provision in the agreement? Their conduct in that connection, it seems to me, was consistent with Schatz's testimony that they did not want the Sohmer mortgage to be recorded because "this (The Tides) was a new business and would need credit, and that the filing or the appearance on record of a loan of that size *might interfere with our obtaining credit.*" (Emphasis and matter in parenthesis supplied). (Page 100 of the testimony of Schatz in the Supreme Court, Queens County, marked as Exhibit "9" before Referee Rudin).

■ I agree, also, with the Referee that the objector loaned money and extended credit in reliance on a false representation made in the agreement of January 3, 1958, and, further, that there was reasonable ground for believing that the bankrupts had committed an act which would bar their discharges. I

share also the Referee's view that the bankrupts failed to meet the burden imposed upon them to overcome the prima facie case established by the objector. See in Re Haggerty, 2 Cir., 165 F.2d 977.

■■ I reject the argument made by the bankrupts that they are entitled to a discharge because the agreement of January 3, 1958 was cancelled and terminated by the agreement of December 29, 1959. The law is well settled that the objector need only show that the statement was false at the time it was made. See Josephs v. Powell and Campbell, 2 Cir., 213 F. 627.

Referee Rudin's finding that the objector had sustained specification "1" of the objections to both discharges is affirmed, and the bankrupts' discharges are accordingly denied.

I come now to the specifications of objections which were denied by the Referee, from the denial of which the objector has petitioned for review.

■ The Referee has found as a fact, as to specification "3" against Kahn, that the creditor Newman, Aronson & Neumann advised him prior to the filing of the petition that he did not owe them anything; that the claims of Leo Press and Turnpike Lumber had been paid prior to the filing of the petition herein; that the claims of Nathan Suskind, Thomas Peters, Newsday, Frances Becker, Irving Eisen, Marcus Gruss and Ruth Korman arose after Kahn left the partnership; and that the claim of Eva Gerson was listed in his schedules. Under General Order 47 I am required to accept the Referee's findings of fact unless they are clearly erroneous. Far from being erroneous they are amply supported by the record and accordingly I affirm Referee Rudin's denial of this specification.

So far as Schatz is concerned, the Referee's findings of fact in regard to specifications 3(a), (b), (c) and 4, and his denial thereof, are also amply supported by the record and are accordingly affirmed.

Settle order on notice.