C. B. PUGH, Appellant,

v.

ADCO, INC., Appellee.

No. 19483.

United States Court of Appeals
Fifth Circuit.

March 19, 1964.

Rehearing Denied April 22, 1964.

Machinery Co., Inc. (hereinafter referred to as Standard) of which Pugh was President and principal stockholder. Standard consented to be adjudicated a bankrupt on November 7.

The schedules filed by Pugh in his personal bankruptcy and the schedules filed on behalf of Standard listed a substantial portion of the same assets. In addition, Pugh listed as his individual creditors the creditors of Standard. He signed and swore to the schedules and statements in both proceedings. In the schedules filed for Standard, Pugh admitted that he had operated such business as his individual business since July 5, 1955, the date the organized franchise was canceled by the Secretary of State.

In the hearing before the referee, it became necessary to determine whether the assets listed on both schedules belonged to Pugh individually or to Standard. In addition, he claimed as exempt property to himself in his individual schedules substantial assets which the referee found to be assets of the corporation.

When Pugh made application for his discharge in his personal bankruptcy, ADCO, Inc., the Appellee, a personal creditor, filed objections to the granting of his application for discharge. Later ADCO filed its amended Specifications of Objections to the Discharge of the Bankrupt, alleging that he had committed several offenses punishable by imprisonment as provided under Title 18 U.S.C. § 152. Subsequent to this, ADCO filed Supplemental Specifications of Objections to the Discharge on the additional grounds that since the filing of the Amended Specifications, the bankrupt, Pugh, had been convicted on two counts of violating Section 152, for the taking and conversion of the corporation's assets. Pursuant to this conviction, Pugh had made restitution in an amount in excess of $3000.00. The conviction in no way concerned Pugh's personal bankrupt estate.

In opposition to the Appellee's Motion, Pugh contends that although a conviction under Section 152 is a bar to dis-

---

Marvin Jones, Jones, Barnes, Watkins & Gay, Dallas, Tex., for appellant.

William Madden Hill, Ungerman, Hill, Ungerman & Angrist, Dallas, Tex., for appellee.

Before BROWN and BELL, Circuit Judges, and SIMPSON, District Judge.

SIMPSON, District Judge.

The bankrupt, C. B. Pugh, appeals from an Order of the District Court sustaining the Order of the Referee in Bankruptcy denying him a discharge.

C. B. Pugh filed his voluntary Petition in Bankruptcy on November 4, 1957, and was adjudicated a bankrupt on the same day. On the following day, an involuntary Petition was filed in the same court against Standard Laundry and Cleaning

charge under Section 14, sub. c of the Bankruptcy Act (Title 11 U.S.C. § 32, sub. c,[1] it is only a bar to discharge of the corporation, and as a matter of law does not constitute a sustainable objection to the discharge of Pugh personally.

In denying a discharge, the referee relied on In re Marcus, 149 F.Supp. 496 (S.D.N.Y.). There Marcus had been the sole stockholder and president of a corporation. In his corporate office, Marcus had committed two offenses which barred the corporation's discharge under the Act. When the corporation was adjudicated bankrupt, the appointed trustee obtained an $88,000 judgment against Marcus individually, who then filed his personal, voluntary petition in bankruptcy. On application for discharge, the trustee objected that such should be denied because of Marcus' two offenses committed in the bankruptcy proceedings of the corporation. It was obvious to the Court that the judgment was based on a debt that arose out of Marcus' dealings with the corporate bankrupt. Because of these dealings, and Marcus' complete control and ownership of the corporation, the Court denied his personal discharge.

The bankrupt attempts to distinguish Marcus from the case at bar. First, the appellee was not an objecting creditor of the corporation as was the trustee in Marcus, and secondly, the bankrupt here made restitution which in Marcus was what the trustee was seeking.

Appellant cites Raphiel v. Morris Plan Industrial Bank of New York, 2 Cir., 146 F.2d 340, in support of his right to discharge. The rationale of the Raphiel case is that a bar to discharge will be enforced only as to those who were creditors at the time that the wrongful act occurred, or became creditors within the time specified by the Act. Concerning this second group of creditors, it is interesting to note that in the reasons given for denying a discharge (Title 11 U.S.C. § 32(c) (1–7)), there is nothing in the language of this section to indicate any definite period of time which would automatically bar a discharge. Raphiel was indicted and convicted for unlawfully and willfully concealing from his trustee in bankruptcy merchandise and money and for destroying documents relating to his affairs as a bankrupt. This indictment and later conviction occurred in 1928. In 1943, the same bankrupt filed another voluntary petition in bankruptcy. The objecting creditor had not been a creditor in the earlier proceedings. The bankrupt was granted a discharge.

The holding in the Raphiel case is not in conflict with the principles established in Marcus. In the instant case, the referee applied these latter principles which state that if the acts which are grounds for barring discharge bear some reasonable relationship to the rights of creditors in the personal bankruptcy proceeding, then the discharge should be barred. For two years preceding bankruptcy Pugh had operated the corporation as his individual business. He listed these corporation creditors as his individual creditors. He had intermingled assets, and in effect, the corporation was his alter ego. Pugh's concealment of corporate property for which he was convicted affected creditors of both estates. Cf. Charles Edward & Associates v. England, 9 Cir., 301 F.2d 572; Rameson Brothers v. Goggin, Trustee in Bankruptcy, 9 Cir., 241 F.2d 271.

The bankrupt also urges that ADCO, as the objecting creditor, was not a creditor of the bankrupt corporation and consequently was not affected by what happened in that proceeding. This is not material. It is now a creditor of the individual bankrupt and Section 14, sub. b of the Act gives it standing to object. In Becker v. Shields, 8 Cir., 237 F.2d 622, the Court stated that the right to object to a discharge of a bankrupt is not limited to the defrauded creditor, and that the policy of the statute is to deny a discharge to a bank-

---

[1]. 11 U.S.C. § 32, sub. c provides in part: "The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18; * * *."

rupt who has been shown to have defrauded any creditor by means of a materially false financial statement. The question of discharge is not one relating solely to creditors in general, but also involves public policy. A discharge is granted to an honest debtor in order that he may reinstate himself in the business world; it is refused to the dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In re Hammerstein, 2 Cir., 189 F. 37.

Public policy, the broad remedial purposes of the Bankruptcy Act, and general equitable principles would all be thwarted by denying discharge to the defunct corporation, and at the same time sending the actual malefactor, Pugh, forth from the bankruptcy court with its blessing in the form of a general discharge. Such a result here would be shocking.

The Order of the District Court appealed from was right. It is affirmed.