### In the Matter of Ralph Eugene WELLS, Bankrupt.
### No. 11799–M.

United States District Court
N. D. Alabama,
Middle Division.
Dec. 10, 1965.

Roy D. McCord, Gadsden, Ala., for the bankrupt.

T. J. Carnes, Albertville, Ala., for the trustee.

ALLGOOD, District Judge.

This case presents an important question of bankruptcy law because it involves a construction of the Amendment to Section 14, sub. c(3), passed by Congress in 1960, which appears to be a legislative declaration of policy resolving the conflict in the decisions as to the nature of the right to a discharge.

The objections to the bankrupt's discharge were filed by the Trustee, as authorized by the statute, and the Referee overruled the one ground of objection which he allowed to stand, in the following language:

"The main contention of the trustee may be restated as saying that the bankrupt by means of the false statements made it possible for 'S. & W.' to maintain a status which enabled it to obtain the credit mentioned. Thus, the creditors appear not to have relied upon the false statements concerning the financial condition of 'S. & W.'—assuming that the type of statements described is within the terms of the statute—but rather to have relied upon the relation and arrangement between the lending institution and 'S. & W.' which would not have existed but for the making of the false certifications. The referee concludes that the matter complained of lies a step beyond the point to which Congress has brought the ground for refusing a discharge, that the causal connection is too remote, and that it cannot be said that the credit was obtained by making or causing to be made the false statements."

The Referee's conclusion is based on the text from Collier on Bankruptcy, V. 1 P. 1388, viz.:

"1. 'It was never the intention of Congress to extend clause (3) to all cases of false written statements where credit happens to have been given. It should be confined to cases where the decision to give credit was induced by the false statement, which must have been, if not the moving cause behind the giving, extending or renewal of credit, a contributing cause, i. e.: the lender or seller must to an extent at least have relied upon it  *  *  *.' "

The quoted text from Collier is followed by an analysis of the 1960 Amendment which contains the following statement:

"Where a person gives a statement of his own finances for the purposes of inducing a creditor to lend money to a business in which he is interested, or to which he bears a relationship, whether this operates to bar his discharge should not depend upon the form of the business, viz., corporate, partnership or sole proprietorship."

The wording of the statute was changed by the 1960 Amendment to extend it to cases not only where the bankrupt made false statements as to his individual property, but to cases where the

false statements related to a corporation of which he was an executive officer.

Since his personal creditors would presumably have no recourse against corporation assets why should the bankrupt be denied a discharge as to his personal creditors who would ordinarily not have relied on such false statements and therefore have possibly suffered no injury?

This question can be answered by the assumption that Congress by the 1960 Amendment intended to deny an executive a discharge in all cases where he made false financial statements respecting his own or the corporation's financial condition and Congress has laid at rest the doubt, if doubt existed, in prior decisions that:

1. The right to a discharge is purely a privilege.

"Two principles of law with reference to the discharge of bankrupts seem to be somewhat in conflict in this case. It has been held "the right (of a bankrupt) to a discharge is statutory and Section 14 of the Bankruptcy Act must be construed strictly against the objecting creditor and liberally in favor of the bankrupt; and 'it is not so much the acts of the bankrupt that will prevent his discharge, as it is the intent with which he acts.'" In re Pioch, 3 Cir., 235 F.2d 903, 905–906."

"On the other hand, it is well established that a discharge in bankruptcy is a privilege and not a right accorded to all bankrupts. In re Tabibian, 2 Cir., 289 F.2d 793. Title 11 U.S.C. § 32, governs the discharge of bankrupts and subsection (c) thereof states various grounds which may be the basis for a denial of discharge." (See p. 419, 309 F.2d) Zidoff v. Shaw Brothers, 7 Cir., 309 F.2d 417.

2. The "reliance theory" is considerably weakened, and reliance is satisfied upon showing that any creditor relied on the false statement whether he is still a creditor or not.

The Referee found: (a) That the bankrupt as a partner and as Secretary-Treasurer of a corporation wilfully made false financial statements in writing respecting the financial condition of the corporation. (b) The creditors of the bankrupt had no actual knowledge of the false statements. (c) That the false statements were relative to the partnership and corporate "businesses" and (d) Were made to aid third parties to obtain permanent real estate loans to in part pay off the mortgages and possible materialman's liens on houses constructed by the partnership and later by the corporation. (e) That the "businesses" benefited indirectly by the false statements in that the bankrupt and the "businesses" were enabled to maintain an increased financial status because of the funds moving to them in the transactions. (f) That the creditors did not rely on the financial statement (of which they had no direct knowledge), but rather on the status or relationship between the lending agency and the businesses which would not have been maintained had the false statements not been made.

The Referee concluded that the causal connection was too remote to find that credit was obtained by making or causing to be made a false statement within the meaning of Section 14, sub. c(3).

It is not too clear whether the creditors of the bankrupt were not in part also creditors of S & W, but it may be assumed there were three sets of creditors involved, viz.: (a) Creditors of the bankrupt, an individual; (b) Creditors of the S & W Company, a partnership; and (c) Creditors of the S & W Company, Inc., a corporation.

The 1960 Amendment in explicit terms denies a discharge to the individual for false statements affecting not only his creditors, but creditors of a "business" of which he was a partner or executive.

Prior to 1960 and after 1926 Section 14, sub. c(3) provided:

"(3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition;"

Under the terms of that provision the Courts on several occasions have sustained the denial of the discharge where the credit was obtained for a corporation of which the bankrupt was the *sole or the principal stockholder.*

Mr. Justice Holmes in the case of Levy v. Industrial Finance Corporation said in 1928:

"So when the statute speaks simply of obtaining money, the question for whom the money must be obtained depends upon the context and the policy of the act. It would seem that so far as policy goes there is no more reason for granting a discharge to a man who has fraudulently obtained a loan to a corporation which is owned by him and in which his interests are bound up than for granting one to a man who has got money directly for himself. In re Dresser & Co. (D.C., N.Y.), 144 F. 318."

Levy v. Industrial Finance Corporation, 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572.

In re: Marcus, 2 Cir., 253 F.2d 685, District Judge Galston reiterated this principle:

"So the critical question in this proceeding is whether the false statement thus made was in fact a recital of the bankrupt's financial condition. It is no longer possible for a bankrupt to set up a smoke-screen so as to obscure the realities. Marcus was the owner of the Undergarment Corp. and made this materially false statement to get credit, knowing the statement to be false. It seems idle for him to contend that that has no bearing on the instant proceeding. In Judge Bryan's opinion he wrote (149 F.Supp. [496], 503):

"The statement as to the corporate financial condition and the statement as to Marcus' financial condition were one and the same thing." (See 253 F.2d p. 687)

In re: Leichter, 3 Cir., 197 F.2d 955:

'Whether under the 1926 and subsequent amendments a false statement concerning the financial condition of a corporation in which the bankrupt was the sole stockholder may be deemed a false statement concerning the bankrupt's own financial condition, need not be here decided because even under the Referee's own finding the bankrupt in the instant case was not the sole stockholder but only 'a large stockholder'." (See 197 F.2d p. 958.)

There are several other cases to the same effect. Congress therefore had this background when it adopted the 1960 Amendment.

However the language of the Amendment goes further than the rationale of the decisions, if the Amendment is not limited to the "corporate identity" theory or to cases where the bankrupt was the principal or sole stockholder.

The Act only requires the bankrupt to be an executive of a corporation. He need not be a stockholder. There are no words limiting the application of the Amendment to sole or principal ownership of stock in the corporation.

It is noteworthy that the Act has eliminated the wage earner and non-commercial bankrupt from the penalty of a false financial statement.

Senate Report No. 1688, 86th Congress, 2nd Session (1960), U. S. Code Cong. & Admin. News 1960, p. 2954, makes it plain that Congress felt a complete denial of the discharge was too severe in the case of the non-commercial bankrupt.

The Report apparently gives no guide as to whether Congress meant to penalize the executive by withholding his discharge in all cases where he made a false financial statement to obtain credit for a corporation, regardless of whether his individual creditors suffered or not by the false statement.

If so, Congress has gone a step further than the decisions but in plain language that is what the Amendment dictates.

It has long been held that the bankrupt's discharge is not saved by proof that the defrauded creditor has since been paid or that the objecting

creditor really suffered no damage. See discussion in Rogers v. Gardner, 9 Cir., 226 F.2d 864; also the case of Yates v. Boteler, 9 Cir., 163 F.2d 953. See also Cunningham v. Elco Distributors, 6 Cir., 189 F.2d 87, 25 A.L.R.2d 1008.

It is only necessary to show that some creditor relied on the statement and extended credit and that the statement was false.

■ Although it may be argued that Congress in the 1960 Amendment meant for it to be limited to only those cases in which the individual was the sole or principal stockholder, it would seem more plausible to assume that Congress having knowledge of the background decisions by the use of all inclusive language without any limitations intended to extend the denial of the discharge to cases where the executive of the corporation obtained money or credit for the corporation by false statements relative to the financial condition of the corporation. The penalty is that he would be denied a discharge as to his debts. If Congress did not intend this, it would have been very easy for it to have said so.

Such a holding will be in consonance with the philosophy of Judge Simpson's opinion in the case of Pugh v. ADCO, Inc., 329 F.2d 362, namely:

"The bankrupt also urges that ADCO, as the objecting creditor, was not a creditor of the bankrupt corporation and consequently was not affected by what happened in that proceeding. This is not material. It is now a creditor of the individual bankrupt and Section 14, sub. b of the Act gives it standing to object. In Becker v. Shields, 8 Cir., 237 F.2d 622, the Court stated that the right to object to a discharge of a bankrupt is not limited to the defrauded creditor, and that the policy of the statute is to deny a discharge to a bankrupt who has been shown to have defrauded any creditor by means of a materially false financial statement. The question of discharge is not one relating solely to creditors in general, but also involves public policy. A discharge is granted to an honest debtor in order that he may reinstate himself in the business world; it is refused to the dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In re Hammerstein, 2 Cir., 189 F. 37."

"Public policy, the broad remedial purposes of the Bankruptcy Act, and general equitable principles would all be thwarted by denying discharge to the defunct corporation, and at the same time sending the actual malefactor, Pugh, forth from the bankruptcy court with its blessing in the form of a general discharge. Such a result here would be shocking." (See 329 F.2d p. 364–365)

The Court therefore finds that the Referee's Order is in error and that it should be set aside, and

It is accordingly ordered:

That the Order of the Referee overruling the objections to the discharge be and the same is reversed, set aside and voided, and

It is accordingly ordered:

That the discharge of the bankrupt be and the same is denied.