**In the Matter of Albert M. BARBATO, Bankrupt.**

**No. B-1547-65.**

United States District Court
D. New Jersey.
Nov. 15, 1966.

Kleinberg, Moroney & Masterson, by James E. Masterson, Newark, N. J., for objecting creditor.

Joseph M. Keegan, by Herman Osofsky, Passaic, N. J., for bankrupt.

On Petition for Review

## OPINION

WORTENDYKE, District Judge:

Royal Indemnity Company (Royal), a creditor of Albert M. Barbato (Barbato), an adjudicated bankrupt, has petitioned this Court for review of the Order of Honorable William H. Tallyn, Referee in Bankruptcy, entered July 20, 1966, dismissing Royal's objections to bankrupt's discharge.

The Referee found, upon substantial evidence, and has set forth in his Certificate of Review, dated September 7, 1966, the following facts:

1. The bankrupt, general contractor, was engaged in business as a sole proprietor. Many of his contracts were for Federal projects, and many of them were for substantial amounts.

2. The bankrupt devoted his efforts to the field work and relied on his office staff and his accountants to take care of the paper work.

3. In order to obtain contracts for Federal projects, the bankrupt was required to post payment and performance bonds with an approved surety. He applied to Royal Indemnity Company to act as his surety on such bonds. In this connection the Royal Indemnity Company asked for semi-annual financial statements.

4. Shortly after January 1, 1964 Erich Stier, accountant for the bankrupt, prepared a financial statement as of December 31, 1963, based on the financial records of the bankrupt (which were kept on a cash basis) and on schedules of receivables and payables prepared by Joan Vaslyk of the bankrupt's office force.

5. This financial statement showed the payables at $92,000.90, and the net worth at $163,685.64.

6. Mr. Stier gave this financial statement to the bankrupt and he, in turn, mailed or delivered it to Royal Indemnity Company.

7. Subsequently, the bankrupt applied to Royal Indemnity Company for at least three bonds. Royal became obligated as surety on these bonds in reliance on the accuracy of the financial statement of December 31, 1963.

8. Sometime after January 1, 1964 the bankrupt became worried about the amount of his income tax liability for 1963. He consulted Vincent B. Comperatore, an accountant specializing in tax matters. Mr. Comperatore decided to put the bankrupt's books on an accrual basis in order to lessen the impact of the income tax. Early in March, 1964 he had assembled the information for this purpose, and he then set up the bankrupt's bonds on an accrual basis, commencing as of January 1, 1964.

9. These books, as set up by Mr. Comperatore, showed payables as of January 1, 1964 at $354,889.-75, thus eliminating the net worth as shown on the financial statement of December 31, 1963 and putting the bankrupt in a deficit position. (Whereas Joan Vaslyk had included only unpaid invoices in the schedule of payables given to Mr. Stier, the payables found by Mr. Comperatore included contract liabilities for which invoices may not have been submitted).

10. The financial statement of December 31, 1963 was false.

11. The bankrupt had no actual intent to deceive Royal Indemnity Company in giving the Company this false financial statement.

12. On October 30, 1964 an accountant retained by Royal Indemnity Company attempted to get access to the books of the bankrupt for the period prior to January 1, 1964. He was informed that they were not in the office of the bankrupt at Lodi and that he should contact Mr. Comperatore. On two occasions he telephoned Mr. Comperatore, who was not at home, and asked Mrs. Comperatore to have her husband return his calls. The calls were not returned.

13. No evidence was introduced to show that the bankrupt had failed to explain any loss or deficiency of assets to meet his obligations.

Royal asserted the following grounds for its objection to bankrupt's discharge:

1. Failure of bankrupt to keep or preserve books of account or records for a period prior to January 1, 1964 from which his financial condition and business transactions might be ascertained.

2. Failure to explain satisfactorily losses or deficiency of assets to meet his obligations.

3. Having obtained, while engaged in business as a sole proprietor, property on credit from Royal by causing to be made a materially false statement respecting his financial condition of December 31, 1963.

■ I concur in the Referee's conclusion that the evidence lacked support for Royal's contentions that the bankrupt (1) failed to keep books and records or (2) failed to explain satisfactorily any losses of assets or deficiency of assets to meet his obligations.

Bankrupt's business was that of a general construction contractor with the United States or some of its agencies, and he was required to furnish his public contractees with performance and payment bonds upon which Royal became surety. In connection with his applications to Royal for such bonds during 1964, bankrupt furnished to Royal a financial statement, dated December 31, 1963, prepared and signed by bankrupt's accountant, Stier, which disclosed accounts payable of $92,000. Another public accountant, Gelley, who had examined bankrupt's books for Royal, testified that bankrupt's accounts payable as of January 1, 1964 amounted to $354,889.75. Royal's former bond superintendent testified that if bankrupt's financial statement of December 31, 1963 had disclosed accounts payable of $354,889.75, instead of $92,000., he would not have authorized the issuance of Royal's bonds in 1964. The Referee properly found that Royal became surety on bankrupt's bonds in reliance upon the financial statement of December 31, 1963. However, sometime after January 1, 1964, in preparation of his federal income tax return for the calendar year 1963, Barbato's tax accountant, Comperatore, changed bankrupt's books from a cash to an accrual basis, whereby they disclosed accounts payable as of January 1, 1964 at $354,889.75 by eliminating the net worth shown in the statement of December 31, 1963, which had included only unpaid invoices in the schedule given the accountant who had prepared the statement. The payables computed by the tax accountant, Comperatore, included contract liabilities upon which no invoices had been submitted.

■ I concur in the Referee's conclusion that, while "the bankrupt did obtain credit by causing to be made a materially false statement in writing respecting his financial condition", the evidence fails to support the conclusion that, in causing such statement to be made and submitted, bankrupt intended to deceive Royal. See Becker v. Shields, 237 F.2d 622 (8th Cir. 1956).

The order dismissing Royal's objections to bankrupt's discharge is affirmed. Submit drafts of order accordingly.