**In the Matter of Donald E. HANSON, formerly d/b/a Scott County Grain & Feed Co., a partnership, Bankrupt.**

No. 3–68–1177(D).

United States District Court
D. Minnesota,
Third Division.

Feb. 2, 1970.

Oppenheimer, Hodgson, Brown, Wolff & Leach, by Craig Gagnon, St. Paul, Minn., for Frederick W. Winker.

Lindquist & Vennum, by Jerrold F. Bergfalk, Minneapolis, Minn., for Donald E. Hanson.

NEVILLE, District Judge.

Before the court and raising an issue on which there is a paucity of authority is a petition to review an order of the Referee in Bankruptcy discharging a bankrupt under 11 U.S.C. § 32 (Sec. 14 of the Bankruptcy Act) over objections duly lodged by a substantial creditor. Petitioner maintains the discharge should be denied under paragraph (c) (3) of Section 32 which, as an exception to the general rule, permits a denial of discharge if the bankrupt while engaged in business has obtained for the business money or property on credit by making or causing to be made a materially false statement in writing respecting his or its financial condition.

The Referee found that the instant case on its facts would fall squarely within and be governed by the above exception were it not that the objecting creditor, formerly a partner of the bankrupt, was "equally at fault and equally responsible" for the false financial statement the utterance of which was the basis for the objection. The Referee held that since the objector was "in pari delicto" with the bankrupt, he should not profit thereby and the bankrupt's discharge should be allowed. The court is asked to review the soundness of that conclusion.

■ Since the issue involved here is purely a question of law the court is not required to use the "clearly erroneous" standard. Rather the court is simply to determine whether given the facts as found by the Referee his conclusion is warranted as a matter of law. See Eastmount Construction Co. v. Transport Mfg. & Equipment Co., 301 F.2d 34 (8th Cir. 1962); Smith v. United States, 336 F.2d 165 (4th Cir. 1964).

It would appear from the Referee's findings of fact that the objector was a partner of the bankrupt at or shortly before the time of his adjudication in bankruptcy. The fraud in question occurred on or about July 29, 1966, when armed with a financial statement dated June 30, 1966 which an accountant for the partnership had prepared under the direction of the bankrupt, the bankrupt and the objector met with representatives of a grain company to discuss the granting of a loan to the partnership. At the meeting the false financial statement was presented. The objector had seen it for the first time on the way to the meeting. The grain company at least in part relying on the financial statement, subsequently loaned the partnership $5,000. The financial statement was false and known to be so by both the bankrupt and the objector in that it overstated accounts receivable, understated the value of the equipment, and showed no "notes payable" even though objector who was himself sitting in the meeting and had by that time a copy of the financial statement held a promissory note or notes in a substantial amount due from the partnership. The Referee concluded that by his silence and failure to point out the false statements of which he had knowledge, particularly the notes due him from the partnership, the objector acquiesced in the loan and ratified the false financial statement prepared by or under the direction of the bankrupt.

The lender, the grain company, did not file a claim against the bankrupt during the bankruptcy proceedings and of those creditors who did file claims, the objector's claims are in the largest amount. He is the sole objector to the bankrupt's discharge.

■ The question thus presented is whether an objection to discharge should be sustained where one of two partners becomes a bankrupt and the other partner, having filed a claim as a creditor for a substantial amount in the bankruptcy proceedings, becomes the sole objector to the bankrupt's discharge based upon a financial statement known by both partners to have been false at the time it was given to secure a loan from a company where the lending company itself did not file a claim and thus is not an objector to the discharge. Stated another way, is the equitable doctrine of *pari delicto* or equal fault applicable in such a situation.

Neither counsel have been able to cite nor has the court found any directly controlling authority nor applicable decisions, other than some dicta.

■ It is well settled that the objecting creditor need not be the one who was defrauded by the 32(c) (3) violation. In the Matter of Lepley, Bankrupt, 227 F.Supp. 983 (D.Wis.1964); Becker v. Shields, 237 F.2d 622 (8th Cir. 1956). Any creditor may object on the ground of that indiscretion, and once there is an objection it inures to the benefit of all the creditors. Shainman v. Shear's of Affton, Inc., 387 F.2d 33 (8th Cir. 1967). That is, the false financial statement will bar discharge as to all the creditors, not just the objector or some few creditors. The fact that the defrauded creditor has been paid before the adjudication in bankruptcy so that it is not and cannot be an objecting creditor is not material. In Re Ernst, 107 F.2d 760 (2nd Cir. 1939); In Re Haggerty, 165 F.2d 977 (2nd Cir. 1948).

Section 32 states inter alia that if the objector makes a showing that there is reasonable grounds to believe the bankrupt committed an act which would prevent discharge, the burden of proving himself innocent thereof then rests on the bankrupt. The sole explicit consid-

erations set forth in the statute to determine whether an objection to discharge should be upheld are first the status of the objector as a party in interest, i. e., a creditor and second the guilt or innocence of the bankrupt concerning the alleged offensive act. After an objector has established himself as a creditor, the focus turns toward the bankrupt and his actions, not the character or prior activities of the objector. There is no provision in the Bankruptcy Act to qualify or otherwise modify what the bankrupt must show as a defense to avoid the consequences of a denial of discharge, other than that he did not commit the offense if it has prima facie been established.

Here there is no question but what the objector was a creditor of the bankrupt and according to the Referee's findings that the latter committed the acts alleged. An interpretation of the statute sustaining the objection to discharge is consistent with the idea that a discharge in bankruptcy is a privilege and should be granted only if the bankrupt has conducted his business activities according to certain high standards and good faith. In the Matter of Zidoff (Shaw Brothers) 309 F.2d 417 (7th Cir. 1962). Conversely where one has been dishonest in the pursuit of his business dealings discharge should be withheld.

As stated in Pugh v. ADCO, Inc., 329 F.2d 362 (5th Cir. 1964):

"  *  *  *  the right to object to a discharge of a bankrupt is not limited to the defrauded creditor, and that the policy of the statute is to deny a discharge to a bankrupt who has been shown to have defrauded any creditor by means of a materially false financial statement. The question of discharge is not one relating solely to creditors in general, but also involves public policy. A discharge is granted to an honest debtor in order that he may reinstate himself in the business world; it is refused to the dishonest bankrupt as a punishment for his fraud and to prevent its continuance

in the future.  *  *  * " 329 F.2d at 364–365.

There would appear to be a line of older cases which by inference and by some language recognize that a creditor might under certain circumstances be estopped to object to the bankrupt's discharge. In Re Hagy, 220 F. 665 (6th Cir. 1915); In Re Russell, 176 F. 253 (2nd Cir. 1910); In Re Kraft, 3 F. 892 (S.D.N.Y. 1880). More recent cases, however, contain language to the contrary and support the rule that knowledge by the creditor of the bankrupt's fraudulent representation or even his connivance with the bankrupt or active implication in the fraudulent act should not render him ineligible to be an objector to the bankrupt's discharge.

In Cunningham v. Elco Distributors, 189 F.2d 87 (6th Cir. 1951), the court concerned itself with the same subdivision (c) (3) of section 32 which confronts the court today. While the court found that the evidence was too vague to substantiate the position that the objector was complicitly involved in the wrongdoing, it did note at page 89:

"It is clear from the language of the statute that the purpose of Congress was to prevent any person from falsifying in writing his financial condition and thereby obtaining money or property on credit, or an extension or renewal of credit without suffering the consequential penalty of being denied the privilege of discharging his debts in bankruptcy. The objective was to prevent benefit from fraud or fraudulent falsification in commercial or any other sort of business transactions. A court of equity in protecting the rights of all creditors of a bankrupt will not shield dishonesty. *The technical argument made here that the party objectiong to the discharge had knowledge that the fraudulent misrepresentation in writing was untrue or even connived with the bankrupt should not be seriously considered*" [emphasis added]

And in In Re Johnson, 114 F. Supp. 396 (N.D.Tex.1953), the court after concluding that there was not sufficient evidence to implicate the objector in the presentment of the false financial statement, added by way of dicta at p. 403:

"*Even if Parker [the objector] in fact had been actively implicated in said financial statement, it does not follow that would defeat this opposition to the bankrupt's discharge.*"

The court further stated at p. 402 in reference to the public policy position:

" * * * The present objecting creditor has full standing in law to contest the discharge of this bankrupt, although the ground of objection relates to the false financial statement received by a former creditor and one not a party in the present bankruptcy. Indeed if the policy of the law were otherwise it would invite mischievous consequences. The natural impulse of a hard pressed debtor, knowing he had resorted to false financial statements, would be to leave no stone unturned in trying to pay off creditors victimized by such financial statements, as a hedge and in the hopes of forestalling potential opposition to discharge in event of bankruptcy. In other words, there would be a great urge to attempt preferential payments. * * * "

It seems sound then that in a case such as at bar the activity or inaction of the objector should be legally irrelevant in deciding whether the bankrupt has conducted his activities in such a way as to dictate a denial of his discharge.

The bankrupt argues that a court in a bankruptcy proceeding should consider the equities of the situation before rendering a decision. With this general premise the court concurs. The cases cited by the bankrupt are inapposite however. In each cited case the court appears to have found in favor of a completely innocent party rather than in favor of the party who had acted inequitably but within the limits of the bankruptcy laws. None of the cases dealt with a discharge but rather with priori-

ties and arrangements and as such determined the rights of various creditors rather than the rights of the bankrupt himself. In the case at bar there is no equity in favor of the bankrupt. His active fraudulent conduct made him at least equally if not more guilty than the passive conduct made the objector. In the cited cases there is a strong equity favoring one of the parties whereas here there is no such strong equity. Actually if it can be said that any equity exists either way, it preponderates in favor of the objector whose wrongdoing was of a passive and acquiescent nature rather than the active conduct of the one originally responsible for the preparation of the false financial statement. The court need not reach the question of whether the result would differ if the objector had been the moving force behind the fraud or had held a great bargaining advantage over the bankrupt whereby he forced the bankrupt to commit some act in violation of the bankruptcy law.

The case of In Re Johnston, 2 F.Supp. 443 (W.D.Va.1932), aff'd 63 F.2d 24 (4th Cir. 1933), is cited by the Referee in his findings of facts. This involved a situation where a bankrupt had written a letter to a credit corporation and signed the name of his partner, (now also a creditor) to the instrument. The partner objected to the bankrupt's discharge based in part on that fraud. The court treated the case on this point as though there were no fraudulent statement ever issued, since the objector clearly had ratified his originally unauthorized signature by continuing to deal with and permitting the partnership to continue to deal with the lending company to whom the statement was given. This is concretely pointed out in the appellate opinion in that case. See Johnston v. Johnston, 63 F.2d 24, 25 (4th Cir. 1933). This court does not discern any precedent in the *Johnston* case for denying the objections to discharge.

Although the question is not wholly free from doubt, the court believes the public policy argument so ably stated in the quotation above from *Pugh* over-

rides any claimed application of an equitable doctrine, particularly where there are no equities extant in favor of the bankrupt who was the one principally responsible for the false financial statement.

A separate order has been entered.